237 P.3d 241 (2010)
SOUND INFINITI, INC., d/b/a Infiniti of Kirkland, a Washington corporation, ex rel. Afshin Pisheyar, a shareholder thereof; Infiniti of Tacoma at Fife, Inc., a Washington corporation, ex rel. Afshin Pisheyar, a shareholder thereof; S & I of WA LLC, a Washington limited liability company, ex rel. Afshin Pisheyar, a member thereof; RDA Properties, LLC, a Washington limited liability company, ex rel. Afshin Pisheyar, a member thereof; and Afshin Pisheyar, an unmarried individual, Petitioners,
v.
Richard M. SNYDER and Jeanne C. Snyder, husband and wife, and their marital community; David Hannah and Martha M. Hannah, husband and wife, and their marital community; and Sound Infiniti, Inc., d/b/a Infiniti of Kirkland, a Washington corporation, Respondents.
No. 81923-8.
Supreme Court of Washington, En Banc.
Argued January 14, 2010.
Decided July 22, 2010.
*242 Daniel C. Montopoli, Lucy R. Clifthorne, James A. Krueger, Attorneys at Law, Tacoma, WA, for Petitioners.
Ronald Lewis Berenstain, William C. Rava, Perkins Coie LLP, Seattle, WA, Boyd F. Buckingham Jr., Attorney at Law, Renton, WA, for Respondents.
Kristopher Ian Tefft, Olympia, WA, amicus counsel for Association of Washington Business.
OWENS, J.
¶ 1 This case allows us to consider whether an appraisal proceeding is the exclusive remedy for a dissenting shareholder who was frozen out through a reverse stock split. It is also an opportunity to visit the question of whether there are circumstances under which a divested shareholder has standing in a derivative suit. We affirm the Court of Appeals and hold (1) that the appraisal proceeding in RCW 23B.13.020 is a dissenting shareholder's exclusive remedy unless a corporate action is procedurally defective or fraudulent and (2) that a divested shareholder does not have standing in a derivative suit.

FACTS
¶ 2 Richard Snyder, David Hannah, and Afshin Pisheyar formed Sound Infiniti, Inc. (doing business as Infiniti of Kirkland) to operate an Infiniti automobile dealership. Snyder had a 30 percent share, Hannah had a 51 percent share, and Pisheyar had a 19 percent share in Sound Infiniti. Hannah and Snyder enjoyed full management responsibilities of the dealership, while Pisheyar had no role in its management, serving only as secretary of Sound Infiniti.
¶ 3 Snyder independently formed a separate company, S & I of WA LLC, to purchase and develop land on which Infiniti of Kirkland would be located, and then lease the property to Sound Infiniti. Snyder disclosed his intention to sell the S & I land, but instead allowed Pisheyar and Hannah to convince him to sell each partner a third of S & I rather than finalizing the land sale to an outside buyer. Pisheyar alleges that Snyder orally agreed at this juncture to include Pisheyar and Hannah in all future dealership ventures, though Snyder and Hannah dispute that this agreement was ever made.
¶ 4 In 2003 the three men recruited a fourth partner to incorporate another car dealership, Infiniti of Tacoma at Fife, Inc. (Infiniti of Tacoma). In this separate venture, Snyder owned 51 percent, Hannah 25 percent, Pisheyar 19 percent, and newcomer Robert Curtis 5 percent. Similar to Sound Infiniti, Pisheyar had no management responsibilities at Infiniti of Tacoma and was strictly an investor and a director. Both of the corporations have been very successful and profitable.
¶ 5 In 2004 Pisheyar's relationship with Hannah and Snyder soured as Pisheyar and Snyder bickered over management of the dealerships. Pisheyar demanded a more active role in management and decision making. Snyder and Hannah reminded Pisheyar that he had a nonmanagerial role in the corporations and was not entitled to operational control, but Pisheyar persisted. Hannah and Snyder made a $900,000 loan from Sound Infiniti and Infiniti of Tacoma together to a new corporation to purchase land for a separate Nissan dealership in which Pisheyar was not invited to participate. Pisheyar claims this loan left the corporations undercapitalized, though Infiniti Financial Services stated that Infiniti of Kirkland has always met all Infiniti financial requirements. Snyder and Hannah deny excluding Pisheyar from any corporate decision making in which he was entitled to participate but state that by February 2005, the deteriorating business and personal relationship with Pisheyar was an obstacle to the continued vitality and success of the corporations.
¶ 6 In March 2005 Pisheyar filed suit against Snyder and Hannah, ultimately alleging both individual and derivative harm. The majority shareholders moved to dismiss *243 Pisheyar's claims, but the trial court denied the motion. Sound Infiniti discharged Pisheyar as its secretary, and Snyder and Hannah convened a directors' meeting for Infiniti of Tacoma, of which Pisheyar remained a director. At the directors' meeting, Snyder and Hannah voted to amend Infiniti of Tacoma's articles of incorporation to implement a reverse stock split. Via the reverse stock split, the majority shareholders reduced the corporation's 100 shares to 4. Because Pisheyar's interest in the corporation now equaled only a fractional share of stock (not an entire share of stock), the majority shareholders opted to exchange Pisheyar's interest in the corporation for a cash payout equivalent to the value of his fractional interest. Hannah and Snyder orchestrated a similar reverse stock split for Sound Infiniti by consent of the directors.
¶ 7 Pisheyar obtained a temporary restraining order (TRO) against Snyder and Hannah enjoining the reverse stock splits. In preparation for a hearing on the TRO, the trial court identified Pisheyar's individual claims to include (1) exclusion of Pisheyar from participation in the new Nissan dealership, (2) a breach of fiduciary duty in implementing the reverse stock splits, and (3) Hannah and Snyder's proposed legal fees, which they planned to advance from the corporations. The trial court categorized Pisheyar's shareholder derivative claims against Snyder and Hannah to include their (1) improper borrowing of money from the corporations, (2) improper reporting of fringe benefit expenses, (3) applying for and being awarded a new Nissan dealership in their individual capacities, and (4) purchasing excessive life insurance for Hannah at corporate expense. After a hearing to determine whether the TRO should become permanent, the trial court found Pisheyar could not demonstrate a likelihood of success on the merits for any of the claims and dissolved the TRO.
¶ 8 Once the court vacated the TRO, the reverse stock splits became effective and Pisheyar lost his shareholder status in both corporations. Accordingly, Hannah and Snyder moved to dismiss Pisheyar's claims on the basis that they were all derivative and Pisheyar no longer enjoyed standing. The trial court dismissed the vast majority of Pisheyar's claims as derivative. The court also determined Pisheyar could not maintain most of his individual claims[1] because RCW 23B.13.020, which provides an appraisal proceeding for dissenting shareholders, displaced them as the exclusive remedy.
¶ 9 The trial court then certified its orders to the Court of Appeals as appropriate for discretionary review. The Court of Appeals granted review on three issues. First, does RCW 23B.13.020 provide an exclusive remedy to a minority shareholder when a closely held corporation implements a reverse stock split? Second, were Pisheyar's derivative claims properly dismissed? Third, should Pisheyar's perquisite claims also have been categorized as derivative and, accordingly, dismissed?
¶ 10 The Court of Appeals affirmed in a published opinion, holding that the appraisal proceeding was Pisheyar's exclusive remedy and that Pisheyar could not maintain his derivative suit once he lost his status as a shareholder. Sound Infiniti, Inc. v. Snyder, 145 Wash.App. 333, 186 P.3d 1107 (2008).[2] We granted review to determine (1) whether the appraisal proceeding in RCW 23B.13.020 provides the exclusive remedy to a dissenting minority shareholder who has been divested of his shares through a reverse stock split and (2) whether a divested minority shareholder who has brought a derivative suit against a corporation retains standing to maintain the derivative claims. Sound Infiniti, Inc. v. Snyder, 165 Wash.2d 1019, 203 P.3d 379 (2009).

ISSUES
¶ 11 A. Is the appraisal proceeding in RCW 23B.13.020 the exclusive remedy for dissenting shareholders?
*244 ¶ 12 B. Can divested shareholders maintain standing in a derivative suit?

STANDARD OF REVIEW
¶ 13 We review questions of statutory interpretation de novo. Bostain v. Food Express, Inc., 159 Wash.2d 700, 708, 153 P.3d 846 (2007).

ANALYSIS

A. The appraisal proceeding in RCW 23B.13.020 is Pisheyar's exclusive remedy
¶ 14 The Washington Business Corporation Act (WBCA), Title 23B RCW, provides that shareholders are "entitled to dissent from, and obtain payment of the fair value of the shareholder's shares" when a corporation performs any one of several corporate actions. RCW 23B.13.020(1). One of the corporate actions that triggers the right to dissent is "amendment of the articles of incorporation, whether or not the shareholder was entitled to vote on the amendment, if the amendment effects a redemption or cancellation of all of the shareholder's shares in exchange for cash or other consideration other than shares of the corporation." RCW 23B.13.020(1)(d). If a dissenter is dissatisfied with the corporation's estimate of the fair value of the shares, the dissenter may provide the corporation with his or her own estimate of the fair value of the dissenter's shares. RCW 23B.13.280(1). If the corporation contests the estimate, it must file for an appraisal proceeding to determine the fair value of the shares. RCW 23B.13.300. The WBCA also states that unless the corporate action falls into one of a few limited exceptions, a dissenting shareholder cannot challenge the corporate action outside the appraisal proceeding:
A shareholder entitled to dissent and obtain payment for the shareholder's shares under this chapter may not challenge the corporate action creating the shareholder's entitlement unless the action fails to comply with the procedural requirements imposed by this title, RCW 25.10.900 through 25.10.955, the articles of incorporation, or the bylaws, or is fraudulent with respect to the shareholder or the corporation.
RCW 23B.13.020(2).
¶ 15 The Court of Appeals, relying on the text of RCW 23B.13.020, its legislative history, and case law from Washington and other jurisdictions, found that the appraisal proceeding is generally the exclusive remedy available to minority shareholders who dissent from fundamental corporate changes. Sound Infiniti, 145 Wash.App. at 343-49, 186 P.3d 1107. The Court of Appeals interpreted RCW 23B.13.020(2) narrowly so that the exception for "`fraudulent'" corporate action meant only common law actual fraud. Sound Infiniti, 145 Wash.App. at 346, 186 P.3d 1107. In making this interpretation, it relied on the fact that the legislature omitted the term "`unlawful or'" preceding "`fraudulent.'" Id. (quoting former RCW 23B.13.020(2) (1989)). The Court of Appeals stated that "[t]his [omission], at minimum, suggests that the legislature intended to limit independent remedies for dissenting shareholders to instances of actual fraud." Id. Since there was no showing of common law actual fraud, the Court of Appeals found that the WBCA prohibited a separate action outside the appraisal proceeding. Id. at 349, 186 P.3d 1107.
¶ 16 The Court of Appeals erred by defining "fraudulent" so narrowly as to only encompass common law actual fraud. Id. at 346, 186 P.3d 1107. An examination of the legislative history of RCW 23B.13.020 shows that the statute aims to make the appraisal process the usual and common means by which a dissenter can gain compensation, but does not limit the fraudulent exception only to cases of common law actual fraud. The Senate Journal states:
Proposed subsection 13.02(b) basically adopts the New York formula as to exclusivity of the dissenters' remedy of this chapter. The remedy is the exclusive remedy unless the transaction fails to comply with procedural requirements or is "fraudulent."... Thus in general terms an exclusivity principle is justified. But the prospect that shareholders may be "paid off" does not justify the corporation in proceeding without complying with procedural requirements *245 or fraudulently. If the corporation attempts an action in violation of the corporation law on voting, in violation of clauses in articles of incorporation prohibiting it, by deception of shareholders, or in violation of a fiduciary dutyto take some examplesthe court's freedom to intervene should be unaffected by the presence or absence of dissenters' rights under this chapter.... [The statute] is designed to recognize and preserve the principles that have developed in the case law of Delaware, New York and other states with regard to the effect of dissenters' rights on other remedies of dissident shareholders. See Weinberger v. UOP, Inc., 457 A.2d 701[, 714] (Del.1983) ...; Walter J. Schloss Assoc[.] v. Arkwin Indus[.], Inc., [90 A.D.2d 149,] 455 N.Y.S.2d 844, 847-52 (App.Div.1982) (dissenting opinion), reversed, with adoption of dissenting opinion, [61 N.Y.2d 700,] 460 N.E.2d 1090[, 472 N.Y.S.2d 605] (Ct.App.1984).
2 SENATE JOURNAL, 51st Leg., 2d Spec. Sess., at 3088 (Wash.1989).
¶ 17 Delaware's Weinberger case cited in the commentary states that "[t]he appraisal remedy ... may not be adequate in certain cases, particularly where fraud, misrepresentation, self-dealing, deliberate waste of corporate assets, or gross and palpable overreaching are involved." 457 A.2d at 714. Our own legislative history and Delaware's influential jurisprudence both contemplate a definition of "fraudulent" broader than common law actual fraud. We therefore hold that the Court of Appeals erred by defining the "fraudulent" exception so narrowly. The fact that the legislature omitted the phrase "unlawful or" preceding "fraudulent" does not mean that we should limit the fraudulent exception to common law actual fraud. RCW 23B.13.020(2).
¶ 18 Pisheyar argues that the corporate actions here were "fraudulent" under a broader definition of the term. While we accept that the Court of Appeals defined "fraudulent" too narrowly, there must still be some showing that the corporate action itself (here, the reverse stock split) is "fraudulent with respect to the shareholder or the corporation." RCW 23B.13.020(2). We will not allow a dissenting shareholder to bring a claim outside the appraisal proceeding without a showing of fraudulent action, as we will not destroy the general principle enshrined in the statute that the appraisal proceeding should be the exclusive remedy. A dissenting shareholder cannot seek identical relief outside the appraisal proceeding by merely alleging fraudulent conduct. See Walter J. Schloss Assocs., 455 N.Y.S.2d at 851-52.
¶ 19 We must look at the actual facts of this case to determine whether the corporate action was fraudulent. Pisheyar's individual claim on appeal is that the majority shareholders improperly froze him out by implementing a reverse stock split. Clerk's Papers (CP) at 254. He argues that this action breached the fiduciary duty of good faith and fair dealing by violating his "reasonable expectations as a minority shareholder." CP at 282. This argument is unpersuasive. Washington law specifically states that a company may perform a reverse stock split, providing: "A corporation may ... [i]ssue fractions of a share or pay in money the value of fractions of a share," RCW 23B.06.040(1)(a), and "[e]ffect a reverse split of the corporation's outstanding shares and the number of authorized shares of that class in the same proportions." RCW 23B.10.020(4)(b). Washington clearly does not consider a reverse stock split to be an inherently fraudulent transaction. Any contrary expectation is not a reasonable one. Pisheyar's mere allegation that such an action violated a breach of fiduciary duty does not make it true.
¶ 20 RCW 23B.13.020 is designed to provide dissenters fair and accurate compensation for their shares, recognizing that corporations have both the power and the right to perform such transactions. The actual facts of this case do not support a conclusion of fraudulent behavior. The trial court looked at the facts of the case and found that after a confrontation between Pisheyar and the other stockholders, their relationship deteriorated and irreconcilable differences existed between themboth personal and business. CP at 259. The trial court concluded that in a small, closely held corporation, corporate actions to restore harmonious relations, including *246 ousting those who dislike and distrust the others, are valid. CP at 266. There is no allegation here that the majority shareholders deceived Pisheyar about the reverse stock split, that they provided him with a proportionately small number of shares, or that anything was procedurally wrong with the reverse stock split transaction itself. Pisheyar merely alleges that the majority shareholders wished to be rid of him and froze him out against his wishes. These actions, however, are expressly allowed by Washington law and are not fraudulent by any definition.
¶ 21 Pisheyar brings individual claims for both damages and equitable relief. CP at 323-25. We must examine Pisheyar's individual claims for damages and equitable relief separately, as New York jurisprudence, which the legislative history tells us is particularly persuasive, makes a distinction between actions for damages and actions for equitable relief. First, we examine the damages claims. New York ensures that actions for damages can only be brought within the framework of the exclusive appraisal proceeding. "An action for damages alone will not lie, since this would allow a dissenting shareholder, by merely alleging fraudulent or unlawful corporate conduct, to seek therein the identical relief available to him in appraisal proceedings." Walter J. Schloss Assocs., 455 N.Y.S.2d at 851-52. Walter J. Schloss Associates states that there are some claims for which equitable relief can be granted outside of the appraisal proceeding (for example, fraud or breach of fiduciary duty), but that "an action for damages by a minority shareholder based on the fraudulent or illegal corporate conduct of the majority in discharging its fiduciary duty would be unnecessarily duplicative." Id. at 852 (emphasis added). Furthermore, any misconduct by the majority shareholders can be considered within the appraisal proceeding when a court considers the value of the dissenter's shares. "[T]he full and proper monetary recovery of the fair value of dissenters' shares may be obtained in appraisal proceedings in which the discharge of the majority's fiduciary duty to the minority can be weighed in determining fair value." Id.
¶ 22 We hold that absent a showing of fraudulent conduct, the appraisal mechanism is the exclusive remedy Pisheyar has for his individual claims for damages. Pisheyar can bring his charge of a violation of fiduciary duty within the appraisal proceeding, as the discharge of the majority's fiduciary duty could conceivably affect the value of his shares. Id.
¶ 23 Turning now to Pisheyar's equitable claims, Pisheyar also may not bring his claims for equitable relief in a separate proceeding. While Walter J. Schloss Associates, id. at 851-52, does suggest that equitable claims may sometimes be brought outside the appraisal proceeding, Pisheyar's equitable claims are for an accounting, an injunction enjoining the reverse stock split, and various injunctions that would allow Pisheyar to maintain his earlier role in the corporation. CP at 323-24. These prayers for relief do not allege the type of fraudulent behavior that should be brought outside the appraisal proceeding. The point of the appraisal proceeding is to provide a dissenting shareholder with the fair and accurate value of his shares. Allowing a separate proceeding to seek this type of equitable relief without some showing of fraudulent behavior would seriously undermine the appraisal remedy. It is illogical to have an appraisal remedy for determining the fair value of shares due a dissenter from a valid reverse stock split and then also have a separate proceeding for equitable relief that would enjoin that reverse stock split from occurring in the first place. We hold that a separate proceeding for equitable relief is only appropriate when there is evidence of some fraud beyond the mere fact that a reverse stock split took place.
¶ 24 In sum, while we find that "fraudulent" does encompass actions beyond common law actual fraud, there must still be some showing of a fraudulent corporate action. Since there is no showing that the transaction was fraudulent, Pisheyar's claims for damages resulting from a breach of fiduciary duty can only be litigated within the appraisal proceeding. His claims for equitable relief may not be brought outside of the appraisal proceeding, as there is no showing *247 of fraudulent behavior beyond the mere fact that a reverse stock split took place. The equitable relief that Pisheyar seeks would undo the reverse stock split and would drastically undermine the exclusivity of the appraisal remedy.

B. Pisheyar does not have standing to bring derivative suit
¶ 25 The Court of Appeals reaffirmed the long-standing rule that a "shareholder must remain a shareholder in order to maintain corporate derivative claims." Sound Infiniti, 145 Wash.App. at 351, 186 P.3d 1107(emphasis added). Washington law clearly establishes that standing cannot be maintained without a proprietary interest in the corporation. CR 23.1 states that a "derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of the shareholders or members similarly situated in enforcing the right of the corporation or association." CR 23.1. We have also stated that "[s]tanding to bring a stockholder derivative claim requires a proprietary interest in the corporation whose right is asserted." Haberman v. Wash. Pub. Power Supply Sys., 109 Wash.2d 107, 149, 744 P.2d 1032, 750 P.2d 254 (1987). This court has never adopted any exceptions to the general rule that a proprietary interest in the corporation is required to maintain standing for a derivative action. Pisheyar asks us to abandon this rule and adopt two exceptions to it.
¶ 26 Pisheyar first argues that we should adopt the exception from Lewis v. Anderson, 477 A.2d 1040, 1046 n. 10 (Del.1984), where Delaware recognized an exception so that standing could not be removed where the plaintiff alleges fraud against the corporate action that rescinded his or her shareholder status. Lewis, however, relied on Delaware's version of CR 23.1, which (unlike Washington's version) does not require a plaintiff to fairly and adequately represent the interests of the shareholders. Del. Ch. Ct. R. 23.1.
¶ 27 Pisheyar is no longer a member or shareholder of either of the corporations. He has been divested of his shares. It is therefore utterly unreasonable to think that Pisheyar could fairly and adequately represent the interests of the shareholders similarly situated, as he is simply not a shareholder. We decline to import the Lewis exception here because it contradicts both our version of CR 23.1 and our ruling in Haberman, 109 Wash.2d at 149, 744 P.2d 10321, 750 P.2d 254.
¶ 28 Pisheyar next argues that we should import another exception to the general and recognized rule that a proprietary interest in the corporation is required to maintain standing for a derivative action, this time from a lower court in Oregon. This exception would allow a divested shareholder to have standing to bring derivative suits if the loss of standing "`is the result of corporate action in which the holder did not acquiesce.'" Noakes v. Schoenborn, 116 Or. App. 464, 841 P.2d 682, 685 (1992) (emphasis omitted) (quoting American Law Institute, Principles of Corporate Governance § 7.02(a) (Proposed Final Draft, Mar. 31, 1992)). We have never before recognized this exception. Like the Lewis exception, this exception runs afoul of our previous pronouncement in Haberman and of the requirements of CR 23.1 that a plaintiff fairly and adequately represent the interests of the shareholders. We therefore decline to import this exception, and we reaffirm Washington's clear general rule that standing cannot be maintained without a proprietary interest in the corporation. We affirm the Court of Appeals' ruling dismissing Pisheyar's derivative claims for lack of standing.

CONCLUSION
¶ 29 We affirm the Court of Appeals. Even under a broader reading of RCW 23B.13.020, the actions in this case are not fraudulent and Pisheyar must bring his claims for monetary damages within the appraisal proceeding. We also affirm the Court of Appeals' dismissal of Pisheyar's derivative claims, as Pisheyar no longer had standing for his derivative claims once he lost his proprietary interest in the corporation.
WE CONCUR: BARBARA A. MADSEN, Chief Justice, CHARLES W. JOHNSON, MARY E. FAIRHURST, and JAMES M. JOHNSON, Justices.
*248 SANDERS, J. (dissenting).
¶ 30 The majority correctly rejects the Court of Appeals' narrow interpretation of the word "fraudulent" in RCW 23B.13.020(2). In the next breath, however, it erects a barrier that limits relief to shareholders. I see no reasonor legal supportfor such a barrier. I also cannot agree with the majority's standing analysis. I would allow shareholders involuntarily divested of shares through a reverse stock split orchestrated to deprive them of standing to maintain suit. Because I would reverse the Court of Appeals on both grounds, I dissent.

ANALYSIS

I. RCW 23B.13.020
¶ 31 The majority concedes some claims of fraud do not belong within the appraisal remedy. See, e.g., majority at 246-47. It nonetheless holds plaintiffs who bring claims outside the appraisal remedy must make "some showing that the corporate action itself ... is `fraudulent with respect to the shareholder or the corporation.'" Majority at 245 (quoting RCW 23B.13.020(2)). It continues: "A dissenting shareholder cannot seek identical relief outside the appraisal proceeding by merely alleging fraudulent conduct." Id.
¶ 32 The majority relies on the New York case of Walter J. Schloss Associates v. Arkwin Industries, Inc., which holds: "An action for damages alone will not lie, since this would allow a dissenting shareholder, by merely alleging fraudulent or unlawful corporate conduct, to seek therein the identical relief available to him in appraisal proceedings." 90 A.D.2d 149, 161, 455 N.Y.S.2d 844, 851-52 (App.Div.1982) (Mangano, J., dissenting), reversed, with adoption of dissenting opinion, 61 N.Y.2d 700, 460 N.E.2d 1090, 472 N.Y.S.2d 605 (Ct.App.1984). Importantly, Afshin Pisheyar does not seek "identical" relief. As the majority recognized, Pisheyar brought claims for both damages and equitable relief. Majority at 246. Pursuant to Schloss, then, Pisheyar's claims for equitable relief belong outside the appraisal proceeding because they are not identical to those addressed within it.
¶ 33 Despite this straightforward approach, the majority asserts it would be "illogical" to allow Pisheyar's claims for equitable relief to move forward without "evidence of some fraud beyond the mere fact that a reverse stock split took place." Id. at 246. This requirement that plaintiffs must make "some showing," id. at 245, erects an unwarranted barrier to otherwise legitimate suits. This barrier makes no sense (which might explain why the majority fails to support it with any relevant case law).[1] The appraisal remedy is a clunky and inappropriate tool for claims unrelated to share price. Moreover the majority's requirement is superfluous because preexisting court procedures already address frivolous claims. Claims lacking merit may be dismissed pursuant to various rules of civil procedure, such as CR 12(b)(6)[2] or CR 56(c).[3]
¶ 34 Perhaps Pisheyar would not have prevailed on these claims. Maybe the court would have dismissed them. But the majority's interference with our well-established court procedures hamstrings a prayer for relief before it has a chance to stretch its legs.

II. Standing
¶ 35 CR 23.1 requires a shareholder who brings a derivative suit to enjoy shareholder status when the alleged corporate malfeasance occurred. A shareholder must show he was "a shareholder or member at the time of the transaction of which he complains or that his share or membership thereafter devolved *249 on him by operation of law." CR 23.1. The rule further provides: "The derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of the shareholders or members similarly situated in enforcing the right of the corporation or association." Id. CR 23.1 does not explicitly address remedies for shareholders divested of shares during litigation.
¶ 36 Relying heavily on Haberman v. Washington Public Power Supply System, 109 Wash.2d 107, 744 P.2d 1032, 750 P.2d 254 (1987), the majority holds a minority shareholder loses standing to maintain a derivative action when majority shareholders involuntarily divest the minority shareholder of his shares during litigation. Majority at 247. Haberman, however, does not settle whether a plaintiff retains standing after being involuntarily divested of shareholder status. In fact Haberman addresses only whether a plaintiff enjoys standing to initiate a lawsuit.[4] It says nothing about the issue here, where we must decide divestiture's impact on standing once a suit is already live. Because Pisheyar enjoyed standing when he brought his lawsuit, Haberman does not help this endeavor.
¶ 37 Other jurisdictions, however, have mapped this landscape. Delaware, for example, has carved out an exception to the general rule that loss of shareholder status results in loss of standing. In Lewis v. Anderson, 477 A.2d 1040, 1046 (Del.1984), the court established that standing cannot be removed when the plaintiff alleges fraud against the corporate action that rescinded shareholder status.[5]See also Lewis v. Ward, 852 A.2d 896, 899 (Del.2004) (noting exception when corporate action is "`perpetrated merely to deprive shareholders of the standing to bring a derivative action'" (quoting Kramer v. W. Pac. Indus., 546 A.2d 348, 354 (Del.1988) and Lewis v. Anderson, 477 A.2d at 1046 n. 10)).
¶ 38 Pisheyar also directs our attention to another rule that would allow him to retain standing after being involuntarily deprived of stock. Taking a cue from the American Law Institute (ALI), Oregon allows derivative suits to continue if the loss of standing is the result of corporate action in which the holder did not acquiesce ...." Noakes v. Schoenborn, 116 Or.App. 464, 841 P.2d 682, 685 (1992) (quoting AM. LAW INST., PRINCIPLES OF CORPORATE GOVERNANCE § 7.02(a) (Proposed Final Draft 1992)).[6]
¶ 39 Lewis v. Anderson, 477 A.2d 1040, and Noakes, 116 Or.App. 464, 841 P.2d 682, make sense. Here Pisheyar lost his shareholder status due to reverse stock splits after he initiated litigation. He opposed those reverse stock splits. I would adopt the Lewis v. Anderson and American Law Institute exceptions to guard against majority shareholders' terminating derivative actions by orchestrating a merger or reverse stock split for the purpose of eliminating a minority shareholder. While the majority treats exceptions almost as a dirty word, in this circumstance an exception to the general rule is precisely the answer.
¶ 40 The majority also goes astray by misinterpreting the plain language of CR 23.1. The majority requires that a plaintiff in a derivative action "fairly and adequately represent the interests of the other shareholders." Majority at 247. But this requirement does not accurately recite the rule.
¶ 41 A shareholder derivative action is "a suit asserted by a shareholder on the corporation's behalf against a third party (usu. a corporate officer) because of the corporation's failure to take some action against the third party." BLACK'S LAW DICTIONARY 509 (9th ed.2009). The majority's misreading of the rule today forecloses Pisheyar, a shareholder, from bringing suit on behalf of the *250 company. It would similarly bar any single shareholder in future disputes from bringing suit unless they can somehow show they represent the interests of the "other shareholders." Majority at 247.[7] In cases of closely held corporations such as Sound Infiniti, the majority's interpretation of CR 23.1 would effectively eviscerate derivative actions by minority shareholders.
¶ 42 I read the majority position to mean that a shareholder-plaintiff must somehow show he represents the interests of some percentage (a majority?) of shareholders. CR 23.1 does not require this. In fact, it permits the exact opposite. The rule begins, "In a derivative action brought by one or more shareholders...." CR 23.1 (emphasis added). It clearly contemplates that a single shareholder can bring suit. To maintain that suit, the plaintiff must "fairly and adequately represent the interests of the shareholders or members similarly situated." Id. (italics added). The plaintiff, then, must represent only the interests of shareholders similarly situatednot the majority's notion of some percentage of the entire shareholder pool. Here Pisheyar held 19 percent of both Sound Infiniti and Infiniti of Tacoma shares prior to the reverse stock splits. He fairly and adequately represented the interests of shareholders similarly situated (i.e., himself) to enforce the rights of the corporation against the alleged misdeeds of its officers.

CONCLUSION
¶ 43 Because the majority today (1) restricts relief to shareholders by hampering claims properly outside the appraisal remedy and (2) denies standing to plaintiffs who are squeezed out through corporate action intended to eliminate the derivative action, I dissent.
WE CONCUR: GERRY L. ALEXANDER, TOM CHAMBERS, and DEBRA L. STEPHENS, Justices.
NOTES
[1] The trial court allowed Pisheyar to maintain his individual suit for deprivation of corporate perquisites, such as demo cars, sports tickets, and the like.
[2] The Court of Appeals found that the trial court erred on the issue of corporate perquisites and that the perquisite claims should be dismissed. Sound Infiniti, 145 Wash.App. at 353, 186 P.3d 1107. We do not review this issue.
[1] Schloss, 455 N.Y.S.2d at 851-52, does not comment on a plaintiff's need to make a showing of fraud. It merely mentions that suits for damages alone cannot lie outside the appraisal remedy.
[2] "A trial court should grant a motion to dismiss pursuant to CR 12(b)(6) only `if it appears beyond a reasonable doubt that no facts exist that would justify recovery.'" Atchison v. Great W. Malting Co., 161 Wash.2d 372, 376, 166 P.3d 662 (2007) (quoting Cutler v. Phillips Petroleum Co., 124 Wash.2d 749, 755, 881 P.2d 216 (1994)).
[3] Under CR 56(c), summary judgment is appropriate if the record presents no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Briggs v. Nova Servs., 166 Wash.2d 794, 801, 213 P.3d 910 (2009).
[4] "Standing to bring a stockholder derivative claim requires a proprietary interest in the corporation whose right is asserted." Haberman, 109 Wash.2d at 149, 744 P.2d 1032, 750 P.2d 254 (emphasis added).
[5] In Lewis v. Anderson, 477 A.2d 1040, the corporate action was a merger, and here it is the reverse stock splits. The result in both cases is the same: loss of shareholder status due to involuntary divestiture of stock.
[6] The American Law Institute approved the proposed final draft. It can be found at American Law Institute, Principles of Corporate Governance: Analysis and Recommendations § 7.02(a)(2) ("Standing to Commence and Maintain a Derivative Action"), at 34 (1994).
[7] The word "other" is not found in CR 23.1. By inserting it into the opinion, the majority changes the rule.