IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| BREWSTER 9, LP; BREWSTER HEIGHTS PACKING & ORCHARDS, LP; BREWSTER HEIGHTS PACKING, INC.; CASS & ALYCIA GEBBERS D/B/A CWAC; DIMITY ORCHARDS LLC; DMC DETERING, LLC; GEBBERS FARMS INC.; GVL ORCHARDS LP; HMJD ORCHARDS LLC; JD CHERRIES, LLC; MAC & CASS PARTNERSHIP, LP; MAC & FRANCO ORCHARDS, LP; MAC & KEVIN, LP; MAC & RANDY-ROYS, LP; MAC & TOM FRUIT, LP; PEDRO GUZMAN; TAYLOR ORCHARDS GROUP, LP; WESTCO ORCHARDS, LLC; APPLE HOUSE WAREHOUSE & STORAGE, INC.; AA ORCHARDS; DAN AGAPO, AND ALTA FRESH, LLC D/B/A CHELAN FRESH MARKETING, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | No. 39507-3-III |
| Petitioners, | ) ) | UNPUBLISHED OPINION |
| v. | ) | |
| TROUT-BLUE CHELAN-MAGI, LLC; INTERNATIONAL FARMING CORPORATION, LLC; CASCADIA CAPITAL, LLC; ED JOHNSON; AL ROBISON; CHALIE MCNAIRY AND MARK STENNES, | ) ) ) ) ) ) ) | |
| Respondents, | ) ) | |
| CHELAN HOLDCO, INC., | ) | |
| Defendants. | ) ) | |

No. 39507-3-III
*Brewster 9 LP, et al. v. Trout-Blue Chelan-Magi LLC, et al.*

COONEY, J. — Chelan Fruit Cooperative was purchased by International Farming Corporation LLC (IFC) and reorganized. In addition to IFC, Brewster Heights Packing & Orchards LP (BHPO) submitted a bid to purchase Chelan Fruit Cooperative but their bid was rejected in favor of IFC's. As part of the reorganization, Chelan Fruit Cooperative members' equity interests were converted into shares of Chelan Holdco Inc. (Chelan Holdco), the holding company for Chelan Fruit LLC, previously Chelan Fruit Cooperative. Following the sale and reorganization of Chelan Fruit Cooperative, BHPO and others filed a lawsuit against those involved in the transaction, including Chelan Holdco, IFC, and Chelan Fruit LLC. BHPO alleged that there was misconduct involved in the transaction and that IFC's bid was chosen over BHPO's because of a conspiracy or "scheme" in which the defendants were involved.

Following BHPO's lawsuit, the defendants moved to dismiss some of their claims pursuant to CR 12(b)(6). Ultimately, the trial court dismissed six of BHPO's claims with prejudice. BHPO appeals the dismissal of four of those claims as well as the court's order that dismissed the causes of action with prejudice. We affirm the trial court's order dismissing the four causes of action. Further, because BHPO did not request leave to amend their complaint below, we decline to address their argument that their claims were improperly dismissed with prejudice.

2

BACKGROUND

Chelan Fruit LLC, is a Washington limited liability company that grows, markets, and sells fruit, particularly apples, pears, and cherries. Chelan Fruit LLC, was previously a grower-owned cooperative known as Chelan Fruit Cooperative. Chelan Fruit Cooperative's grower-members could accrue "capital retains, which [were] allocated equity." Clerk's Papers (CP) at 293. Chelan Fruit Cooperative's grower-members could also vote on certain corporate matters. In 2020, Chelan Fruit Cooperative was bought by IFC and reorganized.

BHPO owns shares in Chelan Holdco, the majority owner of Chelan Fruit LLC, and was previously a member of Chelan Fruit Cooperative.

Prior to the sale and reorganization of Chelan Fruit Cooperative, BHPO entered into a joint license with Chelan Fruit Cooperative related to the trademarked SugarBee apple. Chelan Fruit Cooperative obtained a license agreement that granted it the right to propagate and commercialize the SugarBee apple, subject to minimum acreage restrictions. If Chelan Fruit Cooperative did not convince enough grower-members to plant the SugarBee apple, it would lose its license. BHPO agreed to participate in the development of the SugarBee apple and obtained an exclusive sublicense to plant, grow, and produce the SugarBee apple.

3

SALE OF CHELAN FRUIT COOPERATIVE AND REORGANIZATION

In late 2020, Chelan Fruit Cooperative began evaluating a potential sale of the cooperative. Chelan Fruit Cooperative sought multiple offers and engaged Cascadia Capital, an investment banking firm with agricultural experience, to assist in marketing the sale of Chelan Fruit Cooperative. One of the bids to acquire Chelan Fruit Cooperative came from IFC and another was presented jointly by BHPO and a separate company, Auvil Fruit LLC. IFC's bid was ultimately accepted.

In October 2021, Chelan Fruit Cooperative underwent a corporate reorganization to reduce Chelan Fruit Cooperative's tax liabilities and increasing payouts to the grower-members. The restructuring and reorganization transaction would result in Chelan Fruit Cooperative's members' "capital credit accounts converting into shares of Chelan Holdco, which would become the majority owner of Chelan Fruit LLC." CP at 303-04. IFC became the majority shareholder of Chelan Holdco.

COMPLAINT AND ALLEGATIONS OF MISCONDUCT

Following the sale and reorganization of Chelan Fruit Cooperative, BHPO and others (collectively BHPO) filed a lawsuit against IFC, Chelan Holdco, Chelan Fruit LLC, Cascadia Capital, Ed Johnson, Al Robison, Charlie McNairy and various "Does" (collectively Chelan Fruit). BHPO alleged that their bid was more lucrative than the IFC bid and that IFC's bid was chosen due to a conspiracy or "scheme." CP at 280. BHPO

argued Chelan Fruit devised and carried out such a "scheme" in order to "illegally capitalize on the SugarBee® apple's value." *Id.*

Defendant Mr. Johnson is the immediate-past CEO[1] of Chelan Fruit LLC; Mr. Robison is on the board of directors of Chelan Fruit LLC; Mr. McNairy is the current CEO of IFC; and Mr. Mark Stennes is the former interim CEO of Chelan Fruit Cooperative. Relevant to this appeal are BHPO's first, second, seventh, and eighth causes of action.

BHPO's first cause of action is for a breach of fiduciary duty. BHPO alleged that BHPO and other SugarBee apple growers were in a fiduciary relationship with Chelan Fruit LLC (previously Chelan Fruit Cooperative) based on their joint sublicense agreement to produce the SugarBee apple. BHPO alleged that Chelan Fruit breached this fiduciary duty:

> By preparing to sell the SugarBee® apple through multiple sales-and-marketing desks and at prices to which BHPO never agreed, Chelan Holdco (acting by and through its officers and directors) and Chelan Fruit, LLC (acting by and through its officers and directors) are taking advantage of the trust BHPO and the other SugarBee® apple grower Equity Holders placed in them to monitor and control the quantity and quality of the SugarBee® apples sold. *They are thereby breaching the fiduciary duty they owe to BHPO and the other SugarBee® apple grower Equity Holders.*

CP at 311 (emphasis added).

---

[1] Chief executive officer.

BHPO's second cause of action is also for a breach of fiduciary duty. BHPO alleged that Chelan Fruit Cooperative's officers and directors "owe their grower-members fiduciary duties in connection with merger transactions" and that these fiduciary duties were breached that led to "an unfair merger process and deficient purchase price." CP at 312-13.

BHPO's seventh cause of action is for primary liability under the Securities Act of Washington (WSSA), chapter 21.20 RCW. BHPO argues that Chelan Holdco, Mr. Johnson, and Mr. McNairy are primarily liable under WSSA because they "omitted and misrepresented material facts regarding the Merger Transaction that resulted with the singular goal of shedding Chelan Fruit LLC's obligations under the SugarBee Marketing Agreement, and the SugarBee Acreage Restriction." CP at 321. BHPO also alleged that the grower-members "exchanged their equity value in Chelan Fruit Cooperative for shares in Chelan Holdco and are owed the full value of such equity interests. This exchange constitutes a sale of securities under RCW 21.20.430. *Chelan Holdco is, therefore, a 'seller' of securities under RCW 21.20.430.*" CP at 321 (emphasis added) (citation to record omitted).

BHPO's eighth cause of action is for secondary liability under WSSA. BHPO alleged IFC, Chelan Fruit, Cascadia Capital, Mr. Johnson, and Mr. McNairy had a

6

relationship with the "sellers" of securities and are therefore jointly liable for the alleged WSSA violations.

CR 12(b)(6) MOTION TO DISMISS

Shortly after filing their answer, Chelan Fruit filed a CR 12(b)(6) partial motion to dismiss some of BHPO's claims. BHPO opposed the 12(b)(6) motion and moved for leave to file a second amended complaint. The court granted BHPO's motion to file a second amended complaint and set a schedule for supplemental briefing on the partial motion to dismiss.

After BHPO filed their second amended complaint, Chelan Fruit and BHPO filed supplemental briefing on the partial motion to dismiss and the court heard argument on the motion. The court ultimately dismissed BHPO's first, second, fifth, sixth, seventh, and eighth causes of action with prejudice.

Thereafter, BHPO and Chelan Fruit stipulated that there was "no just reason for delay and that final judgment should be entered as to all claims dismissed by the Dismissal Order" pursuant to CR 54(b). CP at 545. The court signed an order stating the same.[2]

BHPO appeals.

---

[2] After BHPO's notice of appeal was filed with this court, the clerk of court sent the parties a letter stating that the CR 54(b) findings were insufficient to permit review as a matter of right. An amended CR 54(b) stipulation and order was filed by the parties thereafter.

7

No. 39507-3-III
*Brewster 9 LP, et al. v. Trout-Blue Chelan-Magi LLC, et al.*

ANALYSIS

BREACH OF FIDUCIARY DUTY (FIRST CAUSE OF ACTION)

BHPO argues that the trial court erred in dismissing its first cause of action under CR 12(b)(6) because it pleaded a "plausible breach-of-fiduciary duty claim against" Chelan Fruit. Appellants' Opening Br. at 33. We disagree.

We review a CR 12(b)(6) dismissal de novo. *Kinney v. Cook*, 159 Wn.2d 837, 842, 154 P.3d 206 (2007). "Dismissal is warranted only if the court concludes, beyond a reasonable doubt, the plaintiff cannot prove 'any set of facts which would justify recovery.'" *Id.* (quoting *Tenore v. AT&T Wireless Servs.*, 136 Wn.2d 322, 329-30, 962 P.2d 104 (1998)). All of the facts alleged in the complaint are taken as true, and this court may consider hypothetical facts supporting the plaintiffs' claim. *FutureSelect Portfolio Mgmt., Inc. v. Tremont Grp. Holdings, Inc.*, 180 Wn.2d 954, 962, 331 P.3d 29 (2014), *aff'd*, 190 Wn.2d 281, 413 P.3d 1 (2018). Thus, a complaint will survive a CR 12(b)(6) motion to dismiss if there is any set of facts that would justify recovery. *Hoffer v. State*, 110 Wn.2d 415, 420, 755 P.2d 781 (1988). However, if the plaintiffs' claims remain legally insufficient, even under their proffered hypothetical facts, dismissal under CR 12(b)(6) is appropriate. *Gorman v. Garlock, Inc.*, 155 Wn.2d 198, 215, 118 P.3d 311 (2005).

8

BHPO's first cause of action is for breach of fiduciary duty by Chelan Holdco and its John Doe officers and directors, and Chelan Fruit LLC and its John Doe officers and directors. BHPO alleged it had a fiduciary relationship with Chelan Fruit LLC (formerly Chelan Fruit Cooperative) and Chelan Holdco based on BHPO's agreement to partner with Chelan Fruit LLC, to develop the SugarBee apple. The court granted Chelan Fruits' CR 12(b)(6) motion to dismiss this claim, concluding that there was no fiduciary relationship.

Fiduciary duties include the obligation of due care, loyalty, and good faith. *Rodriguez v. Loudeye Corp.*, 144 Wn. App. 709, 723, 189 P.3d 168 (2008). A fiduciary relationship exists in law when "the nature of the relationship between the parties [is] historically considered fiduciary in character; *e.g.*, trustee and beneficiary, principal and agent, partner and partner, husband and wife, physician and patient, attorney and client." *McCutcheon v. Brownfield*, 2 Wn. App. 348, 356-57, 467 P.2d 868 (1970). A fiduciary duty can exist as a matter of law but may also develop in fact. *Liebergesell v. Evans*, 93 Wn.2d 881, 890, 613 P.2d 1170 (1980).

As a general rule, absent circumstances that allow a participant to relax their guard and repose their trust in another, participants to a business relationship do not have a fiduciary relationship. *Id*. at 889-90. However, special circumstances may establish a fiduciary relationship in fact where one would not normally arise in law. *Annechino v.*

9

*Worthy*, 162 Wn. App. 138, 143, 252 P.3d 415 (2011) (citing *Liebergesell*, 93 Wn.2d at 890), *aff'd*, 175 Wn.2d 630, 290 P.3d 126 (2012). Whether a fiduciary duty exists in fact may depend on the development of factual proof. *See Liebergesell*, 93 Wn.2d at 891.

In *Liebergesell*, our Supreme Court considered whether special circumstances established a fiduciary relationship in fact between a borrower and a lender where the borrower, a businessman, induced a widowed school teacher to lend him money at a 20 percent interest rate even though he knew rates over 12 percent were illegal. *Id.* at 884-85. The court considered whether the borrower could estop the lender from raising the usury defense based on a fiduciary relationship between the parties. *Id.* at 891. In noting that a "fiduciary relationship between two persons may exist either because of the nature of the relationship between the parties historically considered fiduciary in character," the court concluded that the lender had submitted sufficient evidence of a fiduciary relationship to overcome summary judgment. *Id.* at 890 (quoting *McCutcheon*, 2 Wn. App. at 356).

In *Hutson v. Wenatchee Federal Savings & Loan Ass'n*, we considered whether a savings and loan association had a duty to define the phrase "mortgage insurance" where a borrower alleged she asked the lender for credit life insurance, but the lender only procured mortgage insurance. 22 Wn. App. 91, 92, 100, 588 P.2d 1192 (1978). There, the lender did not explain the difference between the two and the borrower assumed she

10

No. 39507-3-III
*Brewster 9 LP, et al. v. Trout-Blue Chelan-Magi LLC, et al.*

was paying for credit life insurance when she was really only paying for mortgage insurance. *Id.* at 93. We held:

> While the lender's duty is not that of a fiduciary, . . . under the circumstances of this case, it was a jury question whether the lender had a duty to define any ambiguous or specialized terms which might mislead unknowledgeable and uncounseled customers, members of the lay public who rely on the lender's advice. The relationship between such parties involves more trust and confidence than is true of ordinary arm's length dealing, even though the lender legitimately profits from the transaction.

*Id.* at 105.

Here, with the exception of plaintiff Pedro Guzman, all the parties are businesses, intertwined through a purely contractual relationship, not unknowledgeable and uncounseled individuals who may be prone to mislead one another. Imposing a fiduciary duty relationship in fact would place the parties in the untenable position of providing due care, loyalty, and good faith to their own constituents while simultaneously acting primarily for the benefit of those with whom they are contractually obligated. Because BHPO could not prove any set of facts showing that their relationship with Chelan Fruit LLC, and Chelan Holdco was anything more than contractual, dismissal pursuant to CR 12(b)(6) was appropriate.

BREACH OF FIDUCIARY DUTY (SECOND CAUSE OF ACTION) AND VIOLATION OF THE WSSA (SEVENTH AND EIGHTH CAUSES OF ACTION)

BHPO argues that the allegations in the second amended complaint, as to the second cause of action for breach of fiduciary duty, challenge the entire fairness of the

11

merger itself and the court erred in dismissing that cause of action for lack of standing. With respect to their WSSA claims (seventh and eighth causes of action), BHPO asserts the trial court improperly concluded there was no "sale" of securities within the meaning of WSSA and in granting Chelan Fruits' CR 12(b)(6) motion.

As a preliminary issue, Chelan Fruit contends BHPO lacks standing to prosecute their second, seventh, and eighth causes of action because they assert direct claims. In acknowledging the causes of action are direct claims, BHPO argues that because their allegations attack the "fairness and validity of the merger itself" they possess standing because these causes of action do not need to be derivative. Appellant's Opening Br. at 32. BHPO's argument is unpersuasive.[3] BHPO relies on the Washington Supreme Court's decision in *Sound Infiniti, Inc. v. Snyder*, 169 Wn.2d 199, 237 P.3d 241 (2010) (*Sound Infiniti* II), to argue that in the case of a fraudulent action, a shareholder of a Washington corporation is not limited to the statutory appraisal remedy.

Whether a party has standing to assert a cause of action is a question of law we review de novo. *West v. Thurston County*, 144 Wn. App. 573, 578, 183 P.3d 346 (2008).

---

[3] BHPO cites a multitude of Delaware cases for this proposition. However, looking to Delaware caselaw on this issue is unnecessary considering there is applicable law in Washington and the Delaware statutes lack an exclusivity requirement like Washington. *See Sound Infiniti, Inc. v. Snyder*, 169 Wn.2d 199, 208-12, 237 P.3d 241 (2010).

12

If a plaintiff lacks standing, their claims cannot be resolved on the merits and must necessarily fail. *Ullery v. Fullerton*, 162 Wn. App. 596, 604-05, 256 P.3d 406 (2011).

Standing is a common law doctrine that prohibits a litigant from raising the legal rights of another. *Grant County Fire Prot. Dist. No. 5 v. City of Moses Lake*, 150 Wn.2d 791, 802, 83 P.3d 419 (2004). Generally, a shareholder cannot sue for harm done to a corporation or its shareholders, because "the corporation is viewed as a separate entity, and the shareholder's interest is too remote to meet the standing requirements." *Gustafson v. Gustafson*, 47 Wn. App. 272, 276, 734 P.2d 949 (1987). Because of the possibility of abuse by corporate officers and directors, a narrow exception exists that allows shareholders to bring derivative suits on behalf of the corporation. *Dolin v. Murphy*, 174 Wn. App. 288, 297, 300 P.3d 424 (2013). However, shareholders can bring a direct claim when the claim arises from something other than their status as a shareholder. *Sound Infiniti, Inc. v. Snyder*, 145 Wn. App. 333, 352, 186 P.3d 1107 (2008) (*Sound Infiniti* I), *aff'd*, 169 Wn.2d 199, 237 P.3d 241 (2010).

Here, the plaintiffs are former Chelan Fruit Cooperative members who, in their second, seventh, and eighth causes of action, allege direct claims for harm suffered by all former members of Chelan Fruit Cooperative. As BHPO concedes, such claims arise directly from their status as shareholders.

13

Chelan Fruit contends the dissenter's rights statute, codified in the Washington Business Corporation Act, chapter 23B.13 RCW, is the exclusive remedy for a dissenting shareholder. In response, BHPO invokes the Supreme Court's recognition that in certain cases, such as those involving fraud, the statutory appraisal remedy may be inadequate. *Sound Infiniti* II, 169 Wn.2d at 208-09. In *Sound Infiniti* II, the court affirmed "the general principle enshrined in [RCW 23B.13.020] that the appraisal proceeding should be the exclusive remedy" for a dissenting shareholder. *Id.* at 209. However, a showing of fraudulent action, rather than the mere allegation of fraudulent conduct, is required to allow a dissenting shareholder to advance a direct claim. *Id.*

The fraud exception of RCW 23B.13.020(2), and recognized in *Sound Infiniti* II, is not applicable to BHPO's second, seventh, or eighth causes of action in the second amended complaint. Rather than claiming the transaction itself was fraudulent, BHPO claims IFC's bid was chosen over BHPO's because of a conspiracy or "scheme," resulting in IFC acquiring Chelan Fruit for less than fair value, resulting in the members receiving insufficient compensation. RCW 23B.13.020 offers the exact relief BHPO seeks. The statutory right to dissent allows a dissenter to "obtain payment of the fair value of the shareholder's shares." RCW 23B.13.020(1).

BHPO lacks standing to assert the direct claims alleged in their second, seventh, and eighth causes of action. The narrow exception detailed in *Sound Infiniti* II does not

14

apply to the facts BHPO alleges in their second amended complaint. RCW 23B.13.020 is the exclusive means of providing BHPO fair and accurate compensation for their interest in Chelan Fruit. Because BHPO lacked standing, we decline to address BHPO's argument that the trial court improperly concluded there was no "sale" of securities within the meaning of WSSA.

The trial court did not err when it granted Chelan Fruit's CR 12(b)(6) motion dismissing BHPO's second cause of action. We also affirm the trial court's dismissal of BHPO's seventh and eighth causes of action, although on different grounds.

WHETHER THE TRIAL COURT ERRED IN DISMISSING BHPO'S CLAIMS WITH PREJUDICE

BHPO contends the court erred by dismissing their claims with prejudice. We decline to address the alleged error.

RAP 2.5(a) states that this court may refuse to review any claim of error that was not raised in the trial court, subject to certain exceptions. In *Washington Cooperative Chick Ass'n v. Jacobs*, our Supreme Court explained that after once amending its complaint, the plaintiffs could not amend it again without permission from the trial court, which could have been granted or denied within the trial court's discretion. 42 Wn.2d 460, 465, 256 P.2d 294 (1953); CR 15(a) ("A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served . . . . Otherwise, a party may amend the party's pleading only *by leave of court* or by written consent of

15

the adverse party." (Emphasis added.)). However, because the plaintiffs did not request "leave to file any additional amendments to its pleading and did not attempt to show that any successful amendment could be made" at the trial court level, the Supreme Court could not consider the issue. *Chick Ass'n*, 42 Wn.2d at 466.

Similarly, here, BHPO did not request leave to amend their complaint again at the trial court level. Additionally, they do not and did not explain how a further amendment would cure the deficiencies in their second amended complaint. Because they failed to request leave to amend at the trial court level, we decline to consider the issue.

### CONCLUSION

We affirm the trial court's dismissal of the first and second causes of action and, on different grounds, affirm the trial court's dismissal of the seventh and eighth causes of action.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Cooney, J.

WE CONCUR:

Fearing, J.

Staab, A.C.J.

16