# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

JOHN L. DONLIN,                                    )        NO. 67823-0-I
                                                   )
                        Appellant,                 )        DIVISION ONE
                                                   )
        v.                                         )
                                                   )
JERRY MURPHY, in his individual                    )
capacity and in his capacity as director           )
and officer of GREENSHIELDS                        )
INDUSTRIAL SUPPLY, INC., a                         )
Washington corporation, and                        )
CONTRACTOR SUPPLY                                  )
CORPORATION, a Washington                          )        PUBLISHED OPINION
corporation,                                       )
                        Respondents,               )        FILED: April 1, 2013
                                                   )
        and                                        )
                                                   )
GREENSHIELDS INDUSTRIAL                             )
SUPPLY, INC.,                                       )
                                                   )
                        Respondent in an           )
                        action for dissolution     )
                        of the corporation.        )
_____ )

        LAU, J. — John Donlin appeals the trial court's dismissal of his shareholder

derivative claims brought under CR 23.1 on the ground that he lacked standing to bring

suit on behalf of an administratively-dissolved corporation whose assets had been sold through a receivership. Because Jerry Murphy's CR 12(b)(6) motion to dismiss was procedurally improper and because under the Washington Business Corporation Act (WBCA), title 23B RCW, shareholder standing to assert derivative claims survives the administrative dissolution of the corporation, we reverse the trial court's CR 12(b)(6) dismissal order and remand Donlin's derivative claims for trial.

## FACTS

In 2005, Jerry Murphy told his friend, John Donlin, about a business opportunity involving a local business known as "Greenshields Industrial Supply" (GIS), a Washington corporation. Donlin agreed to purchase GIS jointly with Murphy. Donlin contributed approximately $250,000 toward the purchase price and Murphy contributed approximately $224,000, with the balance financed through a commercial loan. The purchase price included all GIS assets except the underlying storefront real estate. GIS leased the real estate from the Greenshields family, with an option to purchase.

Donlin and Murphy agreed to share ownership and management authority equally. Each became a 50 percent shareholder. When Murphy later asked for a 65/35 percent equity adjustment in his favor, Donlin was "stunned" and refused the demand. Although Donlin and Murphy continued to own equal shares, their relationship deteriorated.

In September 2007, Donlin read a news bulletin about the Greenshields family sale of the storefront real estate to a company called "Whido Isle LLC." Donlin later received an e-mail from a friend, who told Donlin that Murphy and his wife owned Whido

Isle. Murphy caused GIS to lease the storefront real estate from Whido Isle. The purchase option expired on December 31, 2007.

In April 2009, Donlin sued GIS for judicial dissolution and an accounting. As grounds for dissolution, Donlin alleged that the directorate was deadlocked,[1] that Murphy had engaged in oppressive behavior,[2] and that Murphy had misapplied and wasted corporate assets.[3] In August 2009, Murphy formed Contractor Supply Corporation (CSC), a Washington corporation. CSC agreed to operate GIS under an agency agreement. In September 2009, the court-ordered receiver assumed control of GIS during the dissolution process.

In October 2009, Donlin amended his complaint to allege derivative claims against Murphy for breach of fiduciary duty[4] and against CSC for violation of the Uniform Fraudulent Transfer Act (UFTA), chapter 19.40 RCW. The amended complaint also included direct claims against Murphy for conversion and ouster. In November

---

[1] RCW 23B.14.300(2)(a) permits judicial dissolution where "[t]he directors are deadlocked in the management of the corporate affairs, the shareholders are unable to break the deadlock, and irreparable injury to the corporation is threatened or being suffered, or the business and affairs of the corporation can no longer be conducted to the advantage of the shareholders generally, because of the deadlock."

[2] RCW 23B.14.300(2)(b) permits judicial dissolution where "[t]he directors or those in control of the corporation have acted, are acting, or will act in a manner that is illegal, oppressive, or fraudulent."

[3] RCW 23B.14.300(2)(d) permits judicial dissolution where "corporate assets are being misapplied or wasted."

[4] Donlin alleged, "Murphy has breached his fiduciary duties to [GIS] and its Shareholders, including Plaintiff Donlin, by engaging in self-dealing, by usurping a corporate opportunity, by exposing [GIS] to liability, and by acting oppressively and in bad faith in the ways alleged [in the amended complaint."

2009, on the receiver's recommendation, the trial court approved the sale of GIS's assets to CSC. In December 2009, the court discharged the receiver upon his distribution of the sale proceeds to GIS's creditors.

In April 2010, the Washington secretary of state administratively dissolved GIS for failure to file renewal paperwork and pay applicable fees. In June 2010, Murphy and CSC moved for summary judgment on all of Donlin's claims.[5] The trial court denied the motion, ruling, "The sale of [GIS] was court authorized on the condition the Plaintiff's and shareholders claims in this lawsuit would remain for trial and survive the sale, i.e., not be transferred." Later that month, Donlin voluntarily dismissed his direct claims against Murphy.[6]

In September 2011, with trial less than two weeks away, CSC and Murphy (collectively, "Murphy") moved successfully before a different judge to dismiss Donlin's derivative claims. Murphy argued among other things that the administrative dissolution of GIS deprived Donlin of standing and that Donlin failed to state a claim under UFTA. Although it cited CR 12(b)(1)[7] and (b)(6)[8] as grounds for dismissal, the court did not

_____

[5] Murphy's motion argued that Donlin's claims failed on the merits, that Donlin's claim for dissolution and an accounting did not survive the receivership or the administrative dissolution of GIS, that Donlin's derivative claims did not survive the receivership, that Donlin failed to meet certain pleading requirements under CR 23.1, and that Donlin was not permitted to bring derivative and direct claims in the same lawsuit.

[6] Donlin's direct claims against Murphy are not at issue in this appeal.

[7] Civil Rule 12(b)(1) permits a party to assert lack of subject matter jurisdiction as a defense to a claim for relief. Because the standing doctrine does not implicate the trial court's subject matter jurisdiction, we need not consider whether the trial court properly granted Donlin's motion to dismiss under CR 12(b)(1). Ullery v. Fulleton, 162

explain its reasoning.[9] The court denied Donlin's motion for reconsideration. Donlin appeals the court's dismissal order.

## ANALYSIS

Murphy contends that "Donlin does not meet the standing requirements under CR 23.1 because the receivership liquidation and winding up together with the dissolution of the corporation have stripped Mr. Donlin of his proprietary interests." Resp't's Br. at 17 (formatting omitted). He clarifies that the sale of GIS's assets and the administrative dissolution of the corporation left "no business to claim an interest in and no class of shareholders to fairly and adequately represent as required by CR 23.1." Resp't's Br. at 21.

In June 2010, the trial court denied Murphy's motion for summary judgment that, among other things, challenged Donlin's standing. The court's order contained a handwritten interlineation stating, "The sale of [GIS] was court authorized on the condition the Plaintiff's and shareholders claims in this lawsuit would remain for trial and survive the sale, i.e., not be transferred." Murphy did not move for reconsideration or request the court to clarify its ruling. And because he failed to cross appeal the ruling, its propriety is not before us.[10]

---

Wn. App. 596, 604-05, 256 P.3d 406 (2011); To-Ro Trade Shows v. Collins, 100 Wn. App. 483, 489, 997 P.2d 960 (2000).

[8] Civil Rule 12(b)(6) permits a party to assert "failure to state a claim upon which relief can be granted" as a defense to a claim for relief.

[9] The trial court's written order did not expressly incorporate its oral ruling.

[10] Murphy does not argue RAP 2.4's application in this case.

The summary judgment ruling clearly ordered a trial on Donlin's derivative claims. This ruling necessarily resolved the very standing challenge Murphy advanced in his subsequent CR 12(b)(6) motion to dismiss.

Murphy claims that the summary judgment order did not resolve his standing challenge "because the issue of standing was not before the court." Resp't's Br. at 31. The record undermines this assertion. Our review of the record indicates Murphy's summary judgment motion placed Donlin's derivative standing squarely before the court. His summary judgment motion argued, "The assets of Greenshields Industrial Supply, Inc. were sold to Contractor Supply Corporation, an accounting was performed, and Greenshields has been administratively dissolved." (Boldface omitted.) Murphy also argued that Donlin's derivative claims did not survive the receivership and asset sale. His brief framed the issue before the court as follows:

> 2. Do Plaintiff's claims for dissolution and accounting against [GIS] survive after [GIS's] assets are sold pursuant to a court supervised receivership and after [GIS] is administratively dissolved?
> 3. Do Plaintiff's derivative claims on behalf of [GIS] survive after all of [GIS's] assets have been sold pursuant to a court authorized sale?

Elaborating on these issue statements, Murphy argued, "If a shareholder in a corporation is divested of ownership of that corporation while a derivative suit is pending, the suit will usually be dismissed." For support, he relied on two standing cases, Johnson v. United States, 317 F.3d 1331 (Fed. Cir. 2003), and Schilling v. Belcher, 582 F.2d 995 (5th Cir. 1978). In both cases, a shareholder lost standing to pursue derivative claims when he was divested of his stock.[11] The undisputed record

---

[11] In Johnson, the court held that a shareholder lost standing to maintain his derivative action when his shares were canceled under a bankruptcy reorganization

leaves no doubt that Murphy's summary judgment motion challenged Donlin's derivative standing.

The trial court rejected Murphy's standing challenge in its unappealed summary judgment order. Undeterred, Murphy moved before a different judge to dismiss Donlin's claims shortly before trial on standing grounds.[12] This motion recast the standing arguments made in his summary judgment motion. The essential claim, however, was the same—Donlin lacked standing to maintain derivative claims on behalf of a corporation that no longer existed, premised on the receivership sale of its assets and its administrative dissolution. Donlin responded, correctly arguing that the summary judgment order "expressly wrote that Mr. Donlin's issues and claims survived to trial in this matter unaffected by the Court's confirmation of the sale to CSC." Disregarding the earlier summary judgment ordering a trial on the merits, the trial court granted Murphy's motion to dismiss Donlin's claims.[13]

---

plan. Johnson, 317 F.3d at 1333-34. In Schilling, the court held that a shareholder lost standing when he sold his stock. Schilling, 582 F.2d at 996 (applying Florida law).

[12] Among other things, Murphy's motion to dismiss argued:
"All of Plaintiff's derivative claims on behalf of [GIS] against the Defendants must be dismissed for lack of standing because the Plaintiff is no longer a shareholder of [GIS] and [GIS] was administratively dissolved as a corporation in April of 2010. Therefore, the Plaintiff no longer has a proprietary interest in [GIS] and all derivative claims asserted by the Plaintiff lack subject matter jurisdiction.
"Furthermore, Plaintiff lacks standing because his asserted derivative claim is not permitted under the Washington Uniform Fraudulent Transfers Act."

[13] Donlin moved for reconsideration, again arguing that the trial court's summary judgment order resolved Murphy's standing challenge. The court denied reconsideration.

The record is silent on the court's rationale for readdressing the standing question that had previously been decided on the same facts and issues in the summary judgment motion. In doing so, the court violated Snohomish County Local Civil Rules 7(b)(2)(D)(6) & (7), which provide:

> 6. Reapplication on Same Facts.
> Except as stated below, when a motion has been ruled upon in whole or in part, the same motion may not be later presented to another judge. If the prior ruling was made without prejudice or when the prior motion has been granted conditionally, and the condition has not been met, any subsequent motion may be presented as set forth below. Reapplication shall be made in the same manner as a motion to reconsider.
> . . .
> 7. Subsequent Motion; Different Facts. If a subsequent motion is made upon alleged different facts, the moving party must show by affidavit what motion was previously made, when and to which judge, what order or decision was made on it, and what new facts are claimed to be shown. For failure to comply with this requirement, the subsequent motion may be stricken, any order made upon such subsequent motion may be set aside, or provide such other relief as the court seems appropriate.

Because the trial court's summary judgment order rejected his standing challenge, Murphy's subsequent CR 12(b)(6) motion was improper.[14]

But even assuming Murphy's summary judgment motion did not raise the effect of administrative dissolution on pending shareholder derivative claims, his argument that the administrative dissolution of GIS eliminated Donlin's shareholder status and

---

[14] We also note that the trial court erred by failing to treat the CR 12(b)(6) motion as a motion for summary judgment, since the trial considered materials outside the pleadings, i.e., the affidavit of Thomas D. Adams in support of the motion and the declaration of John Donlin in support of Donlin's response. It is well established that "[a] motion to dismiss for failure to state a claim is treated as a motion for summary judgment when matters outside the pleading are presented to and not excluded by the court." Sea-Pac Co. v. United Food & Commercial Workers Local 44, 103 Wn.2d 800, 802, 699 P.2d 217 (1985). Given our decision, we need not address this issue.

thereby terminated his ability to fairly and adequately represent similarly situated shareholders, as required under CR 23.1, fails.[15]

A derivative suit permits a shareholder to sue a third party on behalf of a corporation, even though management is a function generally reserved to the corporation's officers and directors:

> Ordinarily, a shareholder cannot sue for wrongs done to a corporation, because the corporation is viewed as a separate entity, and the shareholder's interest is too remote to meet the standing requirements. However, because of the possibility of abuse by the officers and directors of a corporation, a narrow exception has been created for shareholders to bring derivative suits on behalf of the corporation.

Gustafson v. Gustafson, 47 Wn. App. 272, 276, 734 P.2d 949 (1987). "Shareholders have long had the power to assert a corporation's rights on its behalf when its officers and directors have failed to do so or have done so improperly." In re F5 Networks Inc., 166 Wn.2d 229, 236, 207 P.3d 433 (2009).

Standing is a common law doctrine that prohibits a litigant from raising another's legal right. Grant County Fire Prot. Dist. No. 5 v. City of Moses Lake, 150 Wn.2d 791, 802, 83 P.2d 419 (2004). A shareholder bringing a derivative action must meet the standing and pleading requirements in CR 23.1:

---

[15] Murphy argues for the first time on appeal, "Donlin cannot maintain his derivative action because he failed to properly present such claims to the Receiver, and the Receiver elected to not pursue the claims he was aware of based on Mr. Donlin's Amended Complaint." Resp't's Br. at 27. This claim fails. Murphy cites no legal authority for the proposition that a receiver has exclusive discretion to maintain shareholder derivative claims filed on behalf of a corporation. Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) (argument unsupported by reference to the record or citation authority will not be considered). He also cites nothing in the record to support his factual assertion that "[a]lthough the Receiver was aware of Mr. Donlin's claims, he did not assert any claims on behalf of [GIS]." Resp't's Br. at 23. We are not required to search the record to locate relevant evidence. RAP 10.3(a)(6); Mills v. Park, 67 Wn.2d 717, 721, 409 P.2d 646 (1966).

> CR 23.1 imposes four requirements upon a party who wishes to bring derivative actions: (1) he or she must be a shareholder at the time of the complained of transaction, (2) the action must not simply be collusive in order to confer jurisdiction on the court, (3) the complaint must allege what attempts the shareholder made to have the directors or corporation bring the suit, and (4) the shareholder bringing suit must fairly and adequately represent the interests of the class.

Gustafson, 47 Wn. App. at 276-77. Our Supreme Court has also stated, "Standing to bring a stockholder derivative claim requires a proprietary interest in the corporation whose right is asserted." Haberman v. Wash. Pub. Power Supply Sys., 109 Wn.2d 107, 149, 744 P.2d 1032, 750 P.2d 254 (1987). To maintain a derivative claim, the plaintiff's interest as a shareholder must continue throughout the litigation. Sound Infiniti, Inc. v. Snyder, 145 Wn. App. 333, 350, 186 P.3d 1107 (2008), aff'd, 169 Wn.2d 199, 237 P.2d 241 (2010).

Relying on these principles, Murphy argues that the administrative dissolution of GIS stripped Donlin of his shareholder status, thus making it impossible to comply with CR 23.1's requirement that he fairly and adequately represent similarly situated shareholders. Resp't's Br. at 17.

The administrative dissolution of a corporation does not terminate corporate existence for all purposes. Under the WBCA, an administratively dissolved corporation continues to exist and may carry on business necessary and appropriate to wind up and liquidate its affairs. RCW 23B.14.050(1)(e), .210. Dissolution does not "[a]bate or suspend a proceeding pending by or against the corporation on the effective date of dissolution." RCW 23B.14.050(2)(f). Donlin amended his complaint to allege derivative claims against Murphy in October 2009. GIS did not dissolve until April 2010. The statute is plain—the administrative dissolution of GIS did not "[a]bate or suspend"

-10-

Donlin's derivative claims, which were pending against Murphy on the date of dissolution. RCW 23B.14.050(2)(f).

The WBCA's legislative history reinforces the conclusion that "dissolution" has a special statutory meaning. Under the statute, "corporate dissolution" should not be equated with "corporate death:"

> Proposed subsection 14.05(a) [now codified at RCW 23B.14.050(1)] provides that dissolution does not terminate the corporate existence but simply requires the corporation thereafter to devote itself to winding up its affairs and liquidating its assets; after dissolution, the corporation may not carry on its business except as may be appropriate for winding-up.
>
> The Proposed Act uses the term "dissolution" in the specialized sense described above and not to describe the final step in the liquidation of the corporate business. This is made clear by Proposed subsection 14.05(b) [now codified at RCW 23B.14.050(2)], which provides that chapter 14 dissolution does not have any of the characteristics of common law dissolution, which treated corporate dissolution as analogous to the death of a natural person and abated lawsuits, vested equitable title to corporate property in the shareholders, imposed the fiduciary duty of trustees on directors who had custody of corporate assets, and revoked the authority of the registered agent. Proposed subsection 14.05(b) expressly reserves all of these common law attributes and makes clear that the rights, powers, and duties of shareholders, the directors, and the registered agent are not affected by dissolution and that <u>suits by or against the corporation are not affected in any way</u>.

SENATE JOURNAL, 51st Legis., Reg. Sess., at 3095 (1989) (Wash. 1989) (emphasis added). Under the WBCA, Donlin's derivative action—in essence, a suit by the corporation—was not affected in any way by the administrative dissolution of GIS.

Murphy cites <u>Sound Infiniti, Inc. v. Snyder</u>, 169 Wn.2d 199, 237 P.2d 241 (2010), for the proposition that Donlin cannot fairly and adequately represent similarly-situated shareholders following the administrative dissolution of GIS. <u>Sound Infiniti</u> does not control. There, a minority shareholder had been divested of his shares by a reverse stock split while his derivative suit was pending. <u>Sound Infiniti</u>, 169 Wn.2d at 213-14.

The court held that the plaintiff, having lost his shareholder status, no longer "fairly and adequately" represented the interests of similarly-situated shareholders under CR 23.1:

> [The plaintiff] Pisheyar is no longer a member or shareholder of either of the [defendant] corporations. He has been divested of his shares. It is therefore utterly unreasonable to think that Pisheyar could fairly and adequately represent the interests of the shareholders similarly situated, as he is simply not a shareholder.

Sound Infiniti, 169 Wn.2d at 213. The court affirmed the dismissal of the plaintiff's suit for lack of standing. Sound Infiniti, 169 Wn.2d at 214.

Unlike the plaintiff in Sound Infiniti, Donlin was never "divested of his shares." Murphy argues that Donlin lost shareholder status immediately upon GIS's administrative dissolution, but he cites no authority for that proposition. "Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none." DeHeer v. Seattle Post-Intelligencer, 60 Wn.2d 122, 126, 372 P.2d 193 (1962).

Donlin retained shareholder status despite administrative dissolution. The WBCA plainly recognizes the continued existence of shareholder status following administrative dissolution. See RCW 23B.14.050(1)(d) (authorizing a dissolved corporation to make distributions to shareholders, subject to the statutory limitations that applied before dissolution); RCW 23B.14.050(2)(d) (specifying that dissolution does not change shareholder quorum or voting requirements); RCW 23B.14.050(5) (providing for shareholder approval of postdissolution corporate actions, including by a special meeting of the shareholders); RCW 23B.14.040 (shareholders may have authority to approve revocation of dissolution); RCW 23B.14.070 (holder of an unpaid claim against a dissolved corporation may "petition to compel the dissolved corporation to collect any

-12-

amounts owing to it" by any shareholder liable for accepting an unlawful distribution under RCW 23B.08.310); see also SENATE JOURNAL, supra, at 3095 ("Proposed subsection 14.05(b) [now codified at RCW 23B.14.050(2)] . . . makes clear that the rights, powers, and duties of shareholders, the directors, and the registered agent are not affected by dissolution . . . .") (Emphasis added.) Because shareholders retain rights and potential liability after dissolution, Murphy's unsupported conclusion that administrative dissolution immediately terminates the interests of all shareholders is flawed.[16]

Because Donlin retained his shareholder status following the administrative dissolution of GIS, the only relevant consideration under CR 23.1 is whether "it appears that the plaintiff does not fairly and adequately represent the interests of the shareholders or members similarly situated in enforcing the right of the corporation or association." CR 23.1. Murphy never challenged the fairness or adequacy of Donlin's representation. He argues solely that Donlin cannot represent "similarly situated"

---

[16] Two courts applying New York law have concluded that corporate dissolution does not terminate shareholder status for purposes of standing to bring derivative claims. See Snyder v. Pleasant Valley Finishing Co., 756 F. Supp. 725, 730 (S.D.N.Y. 1990) ("A corporation's dissolution or liquidation, without more, will not defeat a shareholder's right to prosecute an action on the corporation's behalf . . . .") (applying New York law); Indep. Investor Protective League v. Time, Inc., 50 N.Y.2d 259, 264, 406 N.E.2d 486 (1980) ("dissolution, without more, did not deprive the shareholders of their derivative remedy . . . ."). A California court came to a similar conclusion in Favila v. Katten Muchin Roseman LLP, 188 Cal. App. 4th 189, 115 Cal. Rptr. 3d 274 (Cal. Ct. App. 2010). The court held, "Just as the dissolved corporation continues to exist for purposes including prosecuting and defending actions by or against it, the shareholders continue to exist and to have rights and potential liabilities with respect to the dissolved corporation. . . . [A]s a matter of public policy, since the shareholders may be responsible for postdissolution claims against the corporation, there is no reason to deny them the right to bring a derivative action, which may benefit them postdissolution. . . ." Favila, 115 Cal. Rptr. 3d at 294-95 (internal citation omitted).

shareholders because he is no longer a shareholder. His argument rests on the erroneous assumption that the administrative dissolution of GIS stripped Donlin of his shareholder status. His standing challenge fails.

CONCLUSION

For the reasons discussed above, the trial court erred when it considered and then granted Murphy's CR 12(b)(6) motion. We reverse and remand Donlin's shareholder derivative claims for trial.

WE CONCUR: