

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

|  |  |
|---|---|
| JAY FRIET, an individual, | No. 73448-2-I |
| Appellant, | DIVISION ONE |
| v. | |
| KATHERINE GAISER, an individual; GUARDIANSHIP SERVICES OF SEATTLE, a non-profit organization; LANDON ENTERPRISES, LLC, a limited liability company; and CAROL GAISER, an individual for the purposes of petitioning to appoint a guardian, | UNPUBLISHED<br><br>FILED: July 5, 2016 |
| Respondents. | |

Cox, J. — Jay Friet appeals the summary judgment order dismissing this declaratory judgment action. Because he has standing to seek declaratory relief, we reverse and remand for further proceedings.

This is a dispute arising out of the operating agreement of Landon Enterprises LLC. The agreement was effective as of November 30, 2006. The original parties to the agreement were the Verah Landon Trust, Carol L. Gaiser, and Marilyn Landon.

The Verah Landon Trust originally owned 45 of the total 100 governance units described in the agreement and 4,455 of the total 9,900 of the financial units. Carol Gaiser then owned 27.5 of the total governance units and 2,722.5 of the total financial units. Marilyn Landon owned the remaining 27.5 of the total governance units and the remaining 2,722.5 of the total financial units.

By written assignment dated September 6, 2008, Friet acquired all of Marilyn Landon's 27.5 governance units and all 2,722.5 of her financial units. Thereafter, a written assignment dated December 17, 2014 vested in him 22.5 of the Verah Landon Trust's 45 governance units and 2,722.5 of this trust's 4,455 financial units. It is undisputed that Friet "now owns a 50% financial interest" in the LLC.[1]

The LLC manages real property that has been in the Landon family for generations.

Carol[2] has "a form of dementia."[3] In May 2013, she appointed her daughter, Katherine, as her attorney in fact. As Carol's attorney in fact, Katherine has participated in LLC affairs on Carol's behalf.[4] Among other things, she attempted to dissolve the LLC, remove its manager, and terminate Friet as an LLC employee.

In March 2015, Friet commenced this declaratory judgment action against Katherine, Guardianship Services of Seattle (GSS), the LLC, and Carol. Friet sought a determination that Katherine could not use her authority as Carol's attorney in fact to conduct LLC affairs under the terms and conditions of the

---

[1] Brief of Respondents Carol Gaiser, Katherine Gaiser, and Guardianship Services of Seattle at 4.

[2] We adopt the parties' naming conventions, using Carol and Katherine to distinguish between mother and daughter.

[3] Brief of Respondents Carol Gaiser, Katherine Gaiser, and Guardianship Services of Seattle at 6.

[4] Id.

operating agreement. He also sought injunctive relief to enjoin Katherine from using that authority to interfere with LLC affairs. Friet further claims that GSS, the trustee for the Verah Landon Trust, has failed to abide by the terms of the operating agreement. He makes similar claims against the LLC and Carol.

Katherine and Carol moved for summary judgment. GSS joined in that motion. The trial court granted their motion. It did so on the basis that Friet's "claims are derivative inasmuch as [he] is not a member" of the LLC under RCW 25.15.375 and the operating agreement.

Friet appeals.

## DECLARATORY JUDGMENT ACTION

Friet argues that he has standing to bring this action under the Declaratory Judgment Act. We agree.

Summary judgment is proper "only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."[5] There is a genuine issue of material fact if reasonable minds could differ on the facts controlling the litigation outcome.[6] We consider "the evidence and all reasonable inferences from [such] evidence in the light most favorable to the nonmoving party."[7]

---

[5] Scrivener v. Clark Coll., 181 Wn.2d 439, 444, 334 P.3d 541 (2014); accord CR 56(c).

[6] Knight v. Dep't of Labor & Indus., 181 Wn. App. 788, 795, 321 P.3d 1275 (quoting Ranger Ins. Co. v. Pierce County, 164 Wn.2d 545, 552, 192 P.3d 886 (2008)), review denied, 339 P.3d 635 (2014).

[7] Keck v. Collins, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015).

3

We review de novo a trial court's grant of summary judgment.[8] We also apply the de novo review standard to interpret contracts.[9]

"Washington continues to follow the objective manifestation theory of contracts."[10] When interpreting an agreement, this court attempts "to determine the parties' intent by focusing on the objective manifestations of the agreement, rather than on the unexpressed subjective intent of the parties."[11]

We give words "their ordinary, usual, and popular meaning unless the entirety of the agreement clearly demonstrates a contrary intent."[12] And we interpret only what was written in the agreement, not what the parties intended to write.[13] Additionally, "[a] contract provision is not ambiguous merely because the parties to the contract suggest opposing meanings."[14] We do "not read ambiguity into a contract 'where it can reasonably be avoided.'"[15]

---

[8] Id.

[9] Kim v. Moffett, 156 Wn. App. 689, 697, 234 P.3d 279 (2010).

[10] Hearst Commc'ns, Inc. v. Seattle Times Co., 154 Wn.2d 493, 503, 115 P.3d 262 (2005).

[11] Id.

[12] Id. at 504.

[13] Id.

[14] GMAC v. Everett Chevrolet, Inc., 179 Wn. App. 126, 135, 317 P.3d 1074, review denied, 181 Wn.2d 1008 (2014).

[15] Id. (internal quotation marks omitted) (quoting Mayer v. Pierce County Med. Bureau, Inc., 80 Wn. App. 416, 421, 909 P.2d 1323 (1995)).

Contract interpretation is a question of law "only when (1) the interpretation does not depend on the use of extrinsic evidence, or (2) only one reasonable inference can be drawn from the extrinsic evidence."[16]

*Standing*

In Washington, the Uniform Declaratory Judgment Act (UDJA) governs declaratory judgments.[17] RCW 7.24.020 provides that "[a] person interested" under a written contract, or whose rights or status are affected by a contract, may have construction or validity questions arising under the instrument determined and may obtain a declaration of rights or status.

The UDJA is "remedial" and "its purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations; and is to be liberally construed and administered."[18]

A claimant must present a justiciable controversy to obtain a declaratory judgment under the UDJA.[19] The claimant must show:

> "(1) . . . an actual, present and existing dispute, or the mature seeds of one, as distinguished from a possible, dormant, hypothetical, speculative, or moot disagreement, (2) between parties having genuine and opposing interests, (3) which involves interests that must be direct and substantial, rather than potential,

---

[16] Tanner Elec. Coop. v. Puget Sound Power & Light Co., 128 Wn.2d 656, 674, 911 P.2d 1301 (1996).

[17] Branson v. Port of Seattle, 152 Wn.2d 862, 877, 101 P.3d 67 (2004).

[18] RCW 7.24.120.

[19] Branson, 152 Wn.2d at 877.

theoretical, abstract or academic, and (4) a judicial determination of which will be final and conclusive."[20]

"Inherent in the justiciability determination is the traditional limiting doctrine of standing."[21] We apply a two-part test to determine standing under the UDJA, and the party seeking standing must meet both parts.[22] To have standing, "(1) the interest asserted must be 'arguably within the zone of interests to be protected or regulated by the [contract] in question,' and (2) the challenged action must have 'caused injury in fact, economic or otherwise, to the party seeking standing.'"[23]

We review de novo whether a party has standing.[24]

Here, the agreement defines a "Transferee" as any person owning at least one governance or financial unit "but who has not been admitted to the Company as a Member pursuant to the [agreement provisions]."[25] Transferees are entitled to share in profits, receive such distributions, and receive income.

---

[20] League of Educ. Voters v. State, 176 Wn.2d 808, 816, 295 P.3d 743 (2013) (alteration in original) (quoting To–Ro Trade Shows v. Collins, 144 Wn.2d 403, 411, 27 P.3d 1149 (2001)).

[21] Branson, 152 Wn.2d at 877.

[22] Grant County Fire Prot. Dist. No. 5 v. City of Moses Lake, 150 Wn.2d 791, 802, 83 P.3d 419 (2004).

[23] Five Corners Family Farmers v. State, 173 Wn.2d 296, 302-03, 268 P.3d 892 (2011) (internal quotation marks omitted) (quoting Grant County Fire Prot. Dist. No. 5, 150 Wn.2d at 802).

[24] In re Estate of Becker, 177 Wn.2d 242, 246, 298 P.3d 720 (2013).

[25] Clerk's Papers at 64.

The agreement also defines rights of the owners of governance units. Governance unit owners "have one vote on all matters subject to a vote," while financial units do not carry voting rights, except in certain circumstances.[26] But a Transferee "shall not be entitled to vote" its governance or financial units, except as provided, and "shall not" have any power to exercise any Member rights or powers.[27]

Based on these provisions of the operating agreement, Friet has standing to sue in this declaratory judgment action. It is undisputed that he owns 50 percent of the LLC based on his ownership of governance and financial units. These units are evidence of his financial interests because they entitle him to share in profits and receive income. Because the LLC agreement specifically provides for these financial interests, they fall within the "'zone of interests'" protected by this agreement.[28]

It is also clear that Katherine's continuous participation in the LLC's affairs may negatively affect Friet's financial interests in the LLC. Specifically, if she succeeds in her attempts to dissolve the LLC, Friet will lose these interests and an "invaluable family legacy." He may also sustain unfavorable tax consequences due to a forced sale of the LLC property.

---

[26] Id. at 66.

[27] Id. at 86.

[28] Five Corners Family Farmers, 173 Wn.2d at 303 (internal quotation marks omitted) (quoting Grant County Fire Prot. Dist. No. 5, 150 Wn.2d at 802).

7

On this record, there is no genuine dispute that the other parts of the test are also satisfied.

*Membership*

Carol, Katherine, and GSS argue that Friet lacks standing to seek a declaratory judgment because he is not an LLC member. They are mistaken.

Assuming, without deciding, that Friet is not a member (an allegation he disputes), that does not bar the claims that he asserts in this action.

It is telling that these parties cite no authority in their joint briefing to support the proposition that membership status in this LLC is required to bring this declaratory judgment action. On this basis alone, we would be entitled to reject this unsupported argument.[29]

More importantly, we have already discussed why Friet's 50 percent ownership interest in the LLC gives him a right to be heard in this action. That is because determining whether a claimant has a direct interest to satisfy one of the declaratory judgment elements is not required to determine whether the claimant has *standing* to bring a declaratory judgment action.[30] Courts determine whether a claimant has standing *before* determining whether the claimant satisfies the four declaratory judgment elements.[31] Membership is simply not dispositive.

---

[29] See Darkenwald v. Emp't Sec. Dep't, 183 Wn.2d 237, 248, 350 P.3d 647 (2015); RAP 10.3(a)(6).

[30] See Five Corners Family Farmers, 173 Wn.2d at 302-03.

[31] See id.

Carol, Katherine, and GSS base their standing argument on Friet's alleged lack of membership status. To the extent Friet's status as a member is in dispute, which it appears to be, there is a genuine issue of material fact for trial. That also precludes summary judgment.

### Personal or Direct Interest in Governance

Carol, Katherine, and GSS next argue that Friet, who they contend is not a member of the LLC, cannot challenge the LLC members' governance of the LLC.[32] We disagree.

There are, at least, two problems with this argument. First, Katherine does not appear to have the rights of a member under the agreement. She fails to point to anything in this record to show compliance with the terms and conditions for membership under the agreement. While she contends she is acting solely on behalf of her mother, it is unclear to this court whether that is true from some of the matters in this record.

Second, as we already explained earlier in this opinion, Friet's 50 percent ownership of the LLC gives him the right to be heard in this action. That is a sufficient personal interest under the UDJA to support the commencement of this action. Whether and to what extent his claims affect members of the LLC will abide the final judgment of the trial court.

---

[32] Brief of Respondents Carol Gaiser, Katherine Gaiser, and Guardianship Services of Seattle at 19-22.

9

*Derivative Claim*

Carol, Katherine, and GSS also characterize Friet's request for declaratory relief as a derivative claim. They argue that because he is not a member of the LLC, statutory and case law bar this action. The trial court agreed. We do not.

Under the Washington Limited Liability Act (WLLA), a claimant may bring a derivative action to enforce the LLC's rights but it must be an LLC member.[33] Although the WLLA does not specify the difference between a derivative action and a direct action, a derivative suit does not benefit the individual member, and both the cause of action and judgment belong to the company.[34] For example, if stockholders are directly injured and that injury is distinct from an injury to a corporation, the stockholders' claims are direct, and any recovery flows to the stockholders.[35]

Here, the summary judgment order states that the dismissal of this action is based on characterizing the claims here as derivative. But this mischaracterizes the nature of this action.

Rather, RCW 7.24.020 provides that "[a] person interested" under a written contract, or whose rights or status are affected by a contract, may have construction or validity questions arising under the instrument determined and

---

[33] RCW 25.15.391; see also CR 23.1.

[34] Tooley v. Donaldson, Lufkin & Jenrette, Inc., 845 A.2d 1031, 1036 (Del. 2004); see also Donlin v. Murphy, 174 Wn. App. 288, 297, 300 P.3d 424 (2013).

[35] Tooley, 845 A.2d at 1036.

may "obtain a declaration of rights or status." Nothing in this statute bars such an action based on characterizing it as derivative.

## OTHER MATTERS

Friet also argues that the trial court erred by dismissing his injunctive relief claim due to lack of standing. We need not reach that question. Whether and to what extent injunctive relief is proper will be determined by the trial court in due course.

Friet also argues that the trial court erred by concluding that he lacked standing to request an adjudication of Carol's incapacity in this action. We need not decide this question. The parties are free to ask the trial court to revisit this question on remand, given our reversal of the summary judgment order.

Lastly, Friet argues that the trial court abused its discretion by not granting a CR 56(f) continuance prior to the hearing on summary judgment. This argument is now moot.

We reverse and remand for further proceedings.

Cox, J.

WE CONCUR:

Trickey, A.C.J.

Appelwick, J.