## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| DOMINICK BYRD, an individual, | No. 55054-7-II |
| Appellant, | |
| v. | UNPUBLISHED OPINION |
| DEPARTMENT OF CORRECTIONS, STATE OF WASHINGTON, | |
| Respondents. | |

MAXA, P.J. – Dominick Byrd appeals the trial court's grant of summary judgment in favor of the Department of Corrections (DOC) and the State (collectively DOC) in his lawsuit against them. The lawsuit arose from Byrd's injury in a fire that occurred in the rental house in which he was renting a room.

Byrd was on community custody supervision when he began renting a room in a privately-owned house listed on the DOC's reentry division's earned release date (ERD) housing voucher program list. DOC did not own or operate the house and did not place Byrd there. Byrd's community custody ended in September 2013, and he continued living in the same room. The fire occurred four years later. Byrd's lawsuit alleged that DOC owed him a duty to ensure that the house in which he was living was safe.

We hold that summary judgment was appropriate under the public duty doctrine. Accordingly, we affirm the trial court's order granting summary judgment in favor of DOC.

FACTS

*Background*

The reentry division of DOC is tasked with helping formerly incarcerated individuals transition into the community. The reentry division may consult the ERD housing voucher program as a resource to help formerly incarcerated individuals find feasible housing options. The ERD housing voucher program maintains an internal website that provides a statewide transitional housing directory and other information and materials that DOC staff may reference.

Under the ERD housing voucher program, DOC also may provide, at its discretion, a maximum of $500 per month as a rent subsidy paid to a landlord for a period of up to three months after the initial prison release. Formerly incarcerated individuals are not required to live in a house listed in the ERD housing voucher program after their release and during their community custody supervision.

DOC provides prospective housing vendors interested in applying to the ERD housing voucher program with a transitional housing provider orientation package. Vendors are required to acknowledge receipt of the orientation package in writing. In the orientation package, DOC advises prospective housing vendors to contact their local building, code enforcement, or environmental services authority to determine the specific requirements they will need to meet since they vary from jurisdiction to jurisdiction and from facility to facility. The orientation package includes examples of common municipal requirements and restrictions, such as common fire and safety code requirements.

The orientation package expressly states that DOC is not a regulatory authority and is not responsible for conducting inspections, licensing or permitting activities for businesses. DOC does not inspect prospective or existing vendor houses to determine whether they are compliant

with various building codes. DOC does not enter into contracts or rental agreements with any housing provider, nor are houses categorized as "DOC housing." Clerk's Papers (CP) at 205.

Around 2012, DOC provided a copy of the orientation package to Aletta Horton, the person who rented a room to Byrd. In December 2013, Horton signed a written acknowledgment that her property at 1020 Sprague Avenue was in compliance with local building codes and the Residential Landlord-Tenant Act of 1973, chapter 59.18 RCW, and that she had a license to rent her property.

*Byrd's Community Custody Release*

In September 2010, Byrd was released from prison after serving a sentence for failure to register as a sex offender. Upon release, Byrd was placed into community custody supervision for 36 months through September 2013. As part of his community custody supervision, Byrd was required to inform DOC of any address changes and to remain under supervision of a community corrections officer.

Over the course of his community custody, Byrd lived at several different addresses. When Byrd was first released from prison, DOC provided Byrd with three months of financial assistance under the ERD housing voucher program. No additional ERD housing voucher program payments were made on Byrd's behalf after December 2010.

In August 2013, Byrd reported to DOC that he had moved to Horton's 1020 Sprague Avenue property. Byrd chose to stay at 1020 Sprague Avenue for several years after his community custody supervision had ended without any financial assistance or involvement from DOC. And once Byrd's community custody had ended, Byrd was not required to report any additional address changes to DOC.

*The Fire*

In October 2017, a fire started in a second floor bedroom at 1020 Sprague Avenue. As a result of the fire, Byrd sustained third degree burns to his back, head, face, arms, and hands, along with burns to his airway.

*Trial Court Procedural History*

In 2019, Byrd filed a lawsuit against DOC, alleging in part that DOC was liable for negligence and negligence per se under RCW 5.40.050 for the injuries he sustained from the 2017 fire at 1020 Sprague Avenue and that DOC's breach of duty was the proximate cause of his injuries.

DOC subsequently moved for summary judgment, arguing that it owed no legal duty to Byrd in part under the public duty doctrine and because no acts or omissions of DOC proximately caused injury to Byrd. Specifically, DOC argued that Byrd's community custody supervision had ended at least four years before the 2017 fire and that DOC had no involvement in Byrd's decision to continue living at 1020 Sprague Avenue after his community custody supervision had ended. The trial court granted the summary judgment motion and dismissed all claims with prejudice.

Byrd appealed the trial court's order granting summary judgment in favor of DOC.

*Appellate Court Procedural History*

In February 2021, Byrd filed his opening brief, but he had not made arrangements to have the clerk's papers transmitted from the trial court to the appellate court. DOC moved to strike the brief, and a commissioner of this court struck Byrd's opening brief for failure to adequately cite to the record. The commissioner ordered Byrd to arrange for the transmission of the clerk's

papers from the trial court to the appellate court and to file an amended opening brief with proper citations to the clerk's papers.

Byrd filed a first amended opening brief that was identical to his original brief, which again did not include citations to the clerk's papers. DOC again moved to strike the brief, and the commissioner struck Byrd's first amended opening brief for failure to comply with the Rules of Appellate Procedure (RAPs).

Byrd filed a second amended opening brief after the required deadline. The brief was substantially the same as the two earlier briefs and again did not include citations to the clerk's papers. DOC again filed a motion to strike the brief or to dismiss the case on the grounds that the brief still failed to include any citations to the clerk's papers. The commissioner denied DOC's motion.

## ANALYSIS

### A. RAP COMPLIANCE

DOC argues that we should dismiss Byrd's appeal because his briefing does not comply with various RAPs, even after he was ordered by a commissioner of this court to file amended briefs to fix his errors. Although we are inclined to agree, we will address Byrd's appeal because this court accepted Byrd's brief for filing.

RAP 10.3(a)(5) expressly states that in the statement of the case, "[r]eference[s] to the record must be included for each factual statement." RAP 10.3(a)(6) states that an appellant must provide "argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record." And all references to the record should designate the page and part of the record, including abbreviating references to the clerk's papers as "CP" and to the report of proceedings as "RP." RAP 10.4(f).

"The purpose of these rules is to enable the court and opposing counsel efficiently and expeditiously to review the accuracy of the factual statements made in the briefs and efficiently and expeditiously to review the relevant legal authority." *Litho Color, Inc. v. Pacific Employers Ins. Co.*, 98 Wn. App. 286, 305-06, 991 P.2d 638 (1999). Appellate courts are not required to address arguments that do not comply with the RAPs, nor are courts expected to search the record to locate relevant evidence. *Helmbreck v. McPhee*, 15 Wn. App. 2d 41, 68, 476 P.3d 589 (2020), *review denied*, 196 Wn.2d 1047 (2021) (failure to comply with RAPs); *Donlin v. Murphy*, 174 Wn. App. 288, 297 n.15, 300 P.3d 424 (2013) (searching the record).

Here, Byrd failed to provide a single citation to the record on appeal in his second amended opening brief, despite two orders from a commissioner of this court to file a brief that complied with the RAPs. Byrd's second amended opening brief ignored the clear directive from the commissioner to file an amended brief containing citations to the clerk's papers.

In light of Byrd's repeated failures to comply with the RAPs, we are inclined to dismiss this appeal. *See Helmbreck*, 15 Wn. App. 2d at 68. But because our court commissioner denied the third motion to strike Byrd's brief and accepted the brief for filing, we will consider Byrd's appeal.

B.     APPLICATION OF PUBLIC DUTY DOCTRINE

Byrd argues that the public duty doctrine does not preclude DOC's liability because the special relationship exception applies. We disagree.[1]

---

[1] Because we affirm based on the public duty doctrine, we do not address the merits of Byrd's negligence claim.

1. Legal Principles

The threshold determination in a negligence claim is whether the defendant owed the plaintiff a duty of care. *Turner v. Dep't of Soc. & Health Servs.*, 198 Wn.2d 273, 284, 493 P.3d 117 (2021). To establish a tort duty against a governmental entity, the public duty doctrine requires plaintiffs to show that the duty breached was owed to them in particular rather than to the public in general. *Ehrhart v. King County*, 195 Wn.2d 388, 398, 460 P.3d 612 (2020).

There are four exceptions to the public duty doctrine. *Munich v. Skagit Emergency Commc'ns Ctr.*, 175 Wn.2d 871, 879, 288 P.3d 328 (2012). One is the special relationship exception. *Id.* Under this exception, the governmental entity owes a duty to a particular plaintiff if there is a "special relationship" between the entity and the plaintiff that gives rise to such a duty. *Id.* A special relationship exists if three elements are established: (1) direct contact or privity between the public entity and the injured plaintiff that sets the plaintiff apart from the general public, (2) express assurances given to the plaintiff by the public entity, and (3) justifiable reliance by the plaintiff. *Id.*

Regarding the second element, assurances cannot be implied. *Cummins v. Lewis County*, 156 Wn.2d 844, 855, 133 P.3d 458 (2006). Instead, the plaintiff "must have sought an express assurance" and "the government must have unequivocally given that assurance." *Id.*

2. Analysis

Byrd cannot show that the special relationship exception to the public duty doctrine applies here. DOC never made any express assurances to Byrd that 1020 Sprague Avenue, or any of the houses listed in the ERD housing voucher program, was compliant with local, state, or federal regulations. Nor has Byrd provided any evidence to show that DOC was involved with

his decision to move and remain at 1020 Sprague Avenue for several years after his community custody supervision had ended.

Further, the record shows that DOC provided only *Horton* with a transitional housing provider orientation package and that *Horton* signed an agreement acknowledging its receipt and certifying that 1020 Sprague Avenue complied with local building codes. And the orientation package provided to Horton explicitly stated that DOC was not "a regulatory agency or responsible for conducting inspections, licensing or permitting activities for businesses in Washington." CP at 216.

Because Byrd has failed to show that the special relationship exception applies, the public duty doctrine applies here. Accordingly, we hold that the trial court did not err in granting summary judgment in favor of DOC.

## CONCLUSION

We affirm the trial court's order granting summary judgment in favor of DOC.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, P.J.

We concur:

LEE, J.

PRICE, J.