# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

REMIGIUS G. SHATAS,

            Appellant,

            v.

ANDREW M. SNYDER, an individual, and the marital community composed of Andrew M. Snyder and Jane Doe Snyder; CAMBRIDGE INFORMATION GROUP I LLC, a Delaware limited liability company; and CAMBRIDGE INFORMATION GROUP, INC., a Maryland corporation,

            Respondents,

            and

BLUCORA, INC., a Delaware corporation,

            Nominal Defendant/Respondent.

No. 73716-3-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: October 17, 2016

TRICKEY, J. — Remigius Shatas appeals the orders dismissing his shareholder derivative action against Andrew Snyder and Snyder's two companies for insider trading in breach of their fiduciary duties to Blucora, Inc. Shatas contends that the trial court erred when it dismissed his action under Civil Rule 12(b)(3) after concluding that the state of Delaware was the proper venue under the forum selection clause in Blucora's bylaws. In reaching this conclusion, the trial court rejected Shatas's arguments that venue was proper in King County because Blucora consented in writing to King County Superior Court and because

Delaware courts lacked personal jurisdiction over one of the defendants, an indispensable party.

The trial court properly rejected Shatas's first argument, because Blucora did not consent in writing to King County. However, the trial court erroneously rejected Shatas's second argument. Delaware courts do not have personal jurisdiction over the defendant for the reason cited by the trial court. And, on this record, we cannot determine whether Delaware has personal jurisdiction over the defendant for any of the reasons raised for the first time in this appeal. Accordingly, we reverse and remand for further proceedings.

FACTS

In March 2015, Shatas, as a shareholder of Blucora Inc., filed a verified derivative complaint in King County Superior Court against Snyder and Snyder's two companies: Cambridge Information Group (CIG), a Maryland corporation, and Cambridge Information Group I LLC (CIG I), a Delaware corporation (collectively, the Snyder defendants). In the complaint, Shatas asserted that he was "and at all times since October 12, 2000 has been, a shareholder of Blucora."[1] Blucora is a Delaware corporation headquartered in King County, Washington.

The complaint alleged that on November 20, 2013, CIG I sold over one million shares of its Blucora stock "on the basis of material, insider information that had not been disclosed to the investing public."[2] The sale occurred just after a 14-year stock price peak and just before a drastic decline of Blucora's stock price. At the time of the sale, Snyder was sitting on the Blucora board as the designated

---

[1] Clerk's Papers (CP) at 15.
[2] CP at 13.

2

representative of CIG, which was the managing member, sole owner, and investment decision-maker of CIG I. Shatas alleged that, through Snyder, CIG I had access to the nonpublic information at the time of this sale.

Based on these allegations, Shatas brought a claim of breach of the duty of loyalty—insider trading. Among the relief requested, Shatas sought disgorgement of insider trading profits resulting from the sale of the 1,006,093 shares of Blucora common stock on November 20, 2013.

Blucora, a nominal defendant, moved to dismiss the derivative complaint for improper venue under Washington's Civil Rule (CR) 12(b)(3). It argued that Shatas was obligated to bring this action in Delaware based on a forum selection clause in Blucora's bylaws, which expressly specified Delaware courts as the exclusive forum for litigation over intra-corporate matters, including shareholder derivative suits and actions for breach of fiduciary duty except in certain circumstances. The Snyder defendants joined this motion.

Shatas opposed Blucora's motion. He argued that under the forum selection clause, venue was proper in King County for two separate reasons: (1) because Blucora had consented in writing to King County Superior Court as a proper forum, and (2) because Delaware courts lacked jurisdiction over CIG, an indispensable party.

The trial court heard argument on Blucora's motion on May 8, 2015. It later granted the motion and dismissed the case without prejudice "and on the condition that CIG consents to the personal jurisdiction of state or federal courts in

Delaware."[3]  Shatas moved for reconsideration, which the court denied.  This appeal followed.

After filing the notice of appeal, Shatas moved in this court to add his counsel as an additional plaintiff/appellant.  He asserted that his counsel became aware of a March 2015 letter from Blucora's stock transfer agent stating that Shatas's Blucora shares were escheated to the state of Alabama in 2012, prior to Shatas filing this lawsuit.  Shatas expressed doubts about the validity of the escheatment but sought to add his counsel as an interim plaintiff "out of an abundance of caution" until his shareholder status had been favorably resolved or a permanent alternative plaintiff was substituted."[4]  A commissioner of this court denied Shatas's motion.

## ANALYSIS

### Motion to Dismiss Appeal

As a threshold matter, Blucora moves to dismiss this appeal under RAP 17.1(a) on the basis that Shatas "is not and has never been a Blucora shareholder . . . and thus is not an 'aggrieved party'[5] under RAP 3.1."[6]  In support of this assertion, Blucora claims that Shatas's shares of Blucora stock escheated to the state of Alabama in 2012, Alabama sold those shares, Shatas filed a claim for the proceeds, Alabama approved the claim and issued a check payable to Shatas in

---

[3] CP at 310-19.
[4] Plaintiff/Appellant's Motion to Add an Add'l Plaintiff/Appellant at 5.
[5] "An aggrieved party is one who was a party to the trial court proceedings, and one whose property, pecuniary and personal rights were directly and substantially affected by the lower court's judgment." In re Welfare of Hansen, 24 Wn. App. 27, 35, 599 P.2d 1304 (1979).
[6] Defendant/Respondent Blucora, Inc.'s Motion to Dismiss Appeal at 1.

the amount of the proceeds, and Shatas cashed this check in July 2014 prior to filing his derivative complaint.

We deny Blucora's motion. RAP 17.1(a) provides that a party may seek relief "other than a decision of the case on the merits." Here, the motion to dismiss requires us to resolve a merits-based issue—Shatas's alleged lack of derivative standing. This issue was not raised in the trial court. And, for reasons we explain next, we decline to consider standing for the first time on appeal.

## Standing

Based on the same allegations presented in its motion to dismiss, Blucora argues that Shatas's lack of derivative standing provides an alternative ground to affirm. We decline to consider this issue.

"Washington law clearly establishes that standing cannot be maintained without a proprietary interest in the corporation." Sound Infiniti, Inc. v. Snyder, 169 Wn.2d 199, 212, 237 P.3d 241 (2010). A derivative plaintiff must remain a shareholder in order to maintain standing for a derivative action. Sound Infiniti, 169 Wn.2d at 212-13.

But our Supreme Court has said that "[i]f the issue of standing is not submitted to the trial court, it may not be considered on appeal." Tyler Pipe Indus., Inc. v. Wash. Dep't of Revenue, 105 Wn.2d 318, 327, 715 P.2d 123 (1986), vacated, 483 U.S. 232, 107 S. Ct. 2810, 97 L. Ed. 2d 199 (1987)).

Here, the issue of Shatas's derivative standing was not submitted to the trial court. Moreover, the issue involves factual disputes on which the appellate record is not fully developed. The trial court is in a better position to address these

5

disputes. For these reasons, we decline to consider the issue of Shatas's derivative standing. We leave this to be resolved by the trial court on remand.

Dismissal for Improper Venue

The main dispute in this appeal is whether the trial court erred when it dismissed this action for improper venue. Specifically, the question presented is whether the trial court properly concluded that Delaware is the proper forum under the forum selection clause in Blucora's bylaws.

Generally, when reviewing decisions on the enforceability of forum selection clauses, the abuse of discretion standard applies. If, however, a pure question of law is presented, a de novo standard of review should be applied as to that question. Dix v. ICT Group, Inc., 160 Wn.2d 826, 833-34, 161 P.3d 1016 (2007). "[W]hen there are no disputed facts, the proper standard of review of the application of a contract's forum selection clause is de novo." Keystone Masonry, Inc. v. Garco Const., Inc., 135 Wn. App. 927, 932, 147 P.3d 610 (2006).

Here, the parties agree that Blucora's bylaw controls and is valid and enforceable. The bylaw provides:

**2.16 Forum for Adjudication of Disputes**
*Unless the corporation consents in writing to the selection of an alternative forum*, the sole and exclusive forum for (i) any derivative action or proceeding brought on behalf of the corporation, (ii) any action asserting a claim of breach of a fiduciary duty owed by any Director, officer, or other employee of the corporation to the corporation or the corporation's stockholders, (iii) any action asserting a claim arising pursuant to any provision of the [Delaware General Corporation Law], or (iv) any action asserting a claim governed by the internal affairs doctrine shall be a state or federal court located within the state of Delaware, *in all cases subject to the court's having personal jurisdiction over the indispensable parties*

6

*named as defendants.*[7]

Under the plain language of this provision, Delaware is the "sole and exclusive forum" for any derivative action except when (1) the corporation "consents in writing to the selection of an alternative forum" or (2) Delaware lacks "personal jurisdiction over the indispensable parties named as defendants."[8]

Before the trial court, Shatas argued that both of these exceptions applied. The trial court rejected these arguments. Shatas contends that this was error. He again asserts that King County is the proper venue for both of these reasons. We address these arguments in turn.

### Consent to Alternative Forum

Shatas argues that the trial court erred when it rejected his argument that Blucora consented in writing to venue in King County by entering into three agreements in August 2011. We disagree.

The three August 2011 agreements were the Securities Purchase Agreement, whereby CIG I purchased 764,192 shares of its stock and a warrant to purchase an additional one million shares of stock; the Warrant to Purchase Common Stock; and the Stockholder Agreement, whereby the parties agreed that Snyder, CIG's representative, would serve as a member of Blucora's board of directors.

The Stockholder Agreement contains the following forum selection clause:

> 8.9 <u>Governing Law; Consent to Jurisdiction</u>. This Agreement shall be governed by, and construed in accordance with, the internal laws of the State of Delaware without regard to the choice of law principles thereof. *Each of the parties hereto irrevocably submits to*

---

[7] CP at 61 (emphasis added).
[8] CP at 61.

*the exclusive jurisdiction of the courts of the State of Washington located in King County and the United States District Court for the Western District of Washington for the purpose of any suit, action, proceeding or judgment relating to or arising out of this Agreement and the transactions contemplated hereby.* Service of process in connection with any such suit, action or proceeding may be served on each party herein anywhere in the world by the same methods as are specified for the giving of notices under this Agreement. Each of the parties hereto irrevocably consents to the jurisdiction of any such court in any such suit, action or proceeding and to the laying of venue in such court. Each party hereto irrevocably waives any objection to the laying of venue of any such suit, action or proceeding brought in such courts and irrevocably waives any claim that any such suit, action or proceeding brought in any such court has been brought in an inconvenient forum.[9]

The Warrant to Purchase Common Stock and the Securities Purchase Agreement contain nearly identical forum selection clauses.

Shatas relies on the emphasized language in this forum selection clause to assert that "Blucora consented in writing to insider trading claims, such as this one, being brought in King County Superior Court."[10] Specifically, he claims that the breach of fiduciary duty claim "relat[es] to" and "aris[es] out of" the August 2011 agreements.[11] We reject this argument.

Under Delaware law, a forum selection clause "no matter how broadly construed, can extend only so far as the series of obligations set forth in the underlying agreement." Parfi Holding AB v. Mirror Image Internet, Inc., 817 A.2d 149, 156 (2002). "Thus, [a forum selection clause] should be applied only to claims that bear on the duties and obligations under the Agreement." Parfi, 817 A.2d at 156. It does not apply to fiduciary duty claims when the defendant's fiduciary duties

_____

[9] CP at 192-93 (emphasis added).
[10] Appellant's Br. at 24.
[11] Appellant's Br. at 24 (alterations in original).

to the plaintiff "consist of a set of rights and obligations that are independent of any contract." 817 A.2d at 157.

For example, in Parfi, the Delaware Supreme Court concluded that fiduciary duty claims brought by a stockholder were beyond the scope of an arbitration clause,[12] because the fiduciary duty claims were not based on the legal rights and obligations created by the agreement. 817 A.2d at 155. It pointed out that the fiduciary duty claims were "independently and separately assertable" had there been no agreement, there was no contract term that created an obligation upon which the plaintiff could base a breach of fiduciary duty claim, and the fiduciary duties owed to the plaintiff rested on an independent set of rights provided for in the Delaware general corporation law. 817 A.2d at 157-58.

By contrast, when a forum selection clause appears in the document that gives rise to the fiduciary relationship governing fiduciary claims, the forum selection clause applies. OTK Assocs., LLC v. Friedman, 85 A.3d 696, 721 (2014); Parfi, 817 A.2d at 160 n.42.

For example, in Elf Atochem North America, Inc. v. Jaffari, the Supreme Court of Delaware concluded that an arbitration clause and forum selection clause applied to the fiduciary duty claims brought by a member of the limited liability company (LLC), because the agreements containing these clauses created a system of setting forward the governance and operation of the parties' joint venture. 727 A.2d 286, 287-88 (1998). It reasoned that the fiduciary duty claims

---

[12] The Delaware Supreme Court has recognized arbitration clauses as "'a specialized kind of forum-selection clause.'" Nat'l Indus. Group (Holding) v. Carlyle Inv. Mgmt. L.L.C., 67 A.3d 373, 384 n.41 (2013) (quoting Scherk v. Alberto-Culver Co., 417 U.S. 506, 519, 94 S. Ct. 2449, 41 L. Ed. 2d 270 (1974)).

were directly related to the defendant's action or inaction in his role as a manager and the remedies bore directly on the defendant's duties and obligations under the agreement. 727 A.2d at 294-95; see also Douzinas v. Am. Bureau of Shipping, Inc., 888 A.2d 1146, 1149-50 (2006) (concluding that the arbitration clause applied to fiduciary duty claims brought by minority members of a LLC, because the LLC agreement created the governance system for the LLC and established the framework governing all of the members' rights and duties toward one another).

Here, the source of Snyder's fiduciary duty is not the Stockholder Agreement. Rather, Snyder's duty is imposed by Delaware general corporation law. Shatas relied on Delaware common law and "principles of restitution and equity" to argue that the defendants breached their duty of loyalty and were obligated to disgorge any and all profits from such sale.[13] Shatas does not point to any term in the Stockholder Agreement that creates an obligation upon which he can base his breach of fiduciary duty claim.

Further, the Stockholder Purchase Agreement does not give rise to or govern the defendants' status as fiduciaries. It does not set out a detailed set of duties or responsibilities that Snyder assumed by virtue of his role on the board. Although the Stockholder Agreement prohibits CIG I and Snyder from engaging in insider trading, both parties agree that the contract merely restates obligations imposed by federal and state securities laws or state corporations laws. Additionally, this agreement was between the corporation and a limited number of shareholders, rather than all members of the LLC.

---

[13] CP at 133.

In short, the agreements in this case are more akin to the agreement in Parfi than to the LLC agreement in Elf Atochem. Shatas's claim is independently assertable and is not dependent on the terms of the agreement for its resolution. Accordingly, the trial court properly concluded that Shatas's fiduciary duty claims are outside the scope of the forum selection clause in the agreement.

Shatas asserts that his fiduciary duty claims "arise from" the August 2011 agreements because "it is only by virtue of the [August 2011 agreements] that Snyder and the CIG entities became insiders and corporate fiduciaries."[14] He further claims that without the August 2011 agreements, his equitable claim "would not exist."[15]

But the relevant consideration is whether the agreements at issue govern the fiduciary duties, not whether they merely give rise to the fiduciary status. In fact, in Parfi, it was by virtue of the underwriting agreement that the corporate investor became the controlling shareholder and was able to appoint directors to the corporation's board of directors. 817 A.2d at 151-52. Nonetheless, the court rejected the argument that the agreement governed the defendants' fiduciary duties. In short, the relevant focus is on the source of the legal obligation. In this case, that is Delaware common law, not the August 2011 agreements. Shatas's arguments to the contrary are not persuasive.

*Jurisdiction over Indispensable Parties*

Shatas argues that the trial court erred when it rejected his argument that CIG, an indispensable party, is not subject to the personal jurisdiction of Delaware

---

[14] Appellant's Br. at 26.
[15] Appellant's Br. at 26.

11

courts. In particular, Shatas contends that the trial court misapplied the law when it concluded that CIG's postfiling willingness to consent to Delaware jurisdiction was sufficient to establish personal jurisdiction. On this latter point, we agree.

"'[J]urisdiction is normally determined as of the date of the filing of the suit.'" Central States, Se. and Sw. Areas Pension Fund v. Phencorp Reinsurance Co., Inc., 440 F.3d 870, 877 (7th Cir. 2006) (quoting Wild v. Subscription Plus, Inc., 292 F.3d 526, 528 (7th Cir. 2002)). Thus, postfiling activities are irrelevant in determining jurisdiction. See Allen v. Russian Fed'n, 522 F.Supp.2d 167, 193-94 (D.D.C. 2007) (rejecting argument that postcomplaint contacts could establish personal jurisdiction).

Here, as of the date the suit was filed, CIG had not yet consented to personal jurisdiction in Delaware. Rather, CIG later consented to personal jurisdiction in Delaware in its joinder to Blucora's motion to dismiss for improper venue. But CIG's postfiling consent does not establish that Delaware had jurisdiction over CIG at the time jurisdiction was determined. Neither does the fact that the trial court granted dismissal "on the condition that CIG consents to the personal jurisdiction of state or federal courts in Delaware."[16] In short, the trial court erred when it relied on this postfiling consent to conclude that Delaware had jurisdiction over CIG.

Blucora relies on Worden v. Smith to argue that CIG's postfiling consent was sufficient to establish personal jurisdiction. 178 Wn. App. 309, 314 P.3d 1125 (2013). There, Division Three held that "a party waives the claim of lack of

---

[16] CP at 318 (boldface omitted).

personal jurisdiction by 'consent[ing], expressly or impliedly, to the court's exercising jurisdiction.'" Worden, 178 Wn. App. at 328 (alteration in original) (quoting In re Marriage of Steele, 90 Wn. App. 992, 997-98, 957 P.2d 247 (1998)). But Worden does not stand for the proposition that postfiling conduct can *invalidate* properly invoked jurisdiction. Reliance on Worden is misplaced.

Blucora points out that courts have dismissed suits pursuant to forum selection clauses "even when the clauses were triggered by events that took place during the course of the litigation."[17] But none of the cases cited by Blucora considered whether a party's postfiling consent could invalidate otherwise proper jurisdiction. Rather, the courts merely determined that the forum selection clauses applied on the occurrence of certain events.

Blucora also points out that courts have decided forum non conveniens motions based on stipulations made during the course of litigation. But the forum non conveniens doctrine "presupposes that there are at least two forums in which the defendant is amenable to process." Lisby v. PACCAR, Inc., 178 Wn. App. 516, 519-20, 316 P.3d 1097 (2013). More importantly, even if CIG's postfiling consent was sufficient to make it amenable to process, Blucora did not move to dismiss based on the doctrine of forum non conveniens, and the trial court did not invoke this doctrine or balance any of the necessary private and public factors required for dismissal under this doctrine. Sales v. Weyerhaeuser Co., 163 Wn.2d 14, 20, 177 P.3d 1122 (2008).

---

[17] Br. of Nominal Defendant/Respondent Blucora, Inc. at 25 (citing Gen. Protecht Grp., Inc. v. Leviton Mfg. Co., Inc., 651 F.3d 1355, 1359 (Fed. Cir. 2011) and John Wyeth & Brother Ltd. v. Cigna Int'l Corp., 119 F.3d 1070, 1076 (3d Cir. 1997)).

Finally, Blucora presents a number of alternative grounds to affirm. For the first time on appeal, Blucora claims that CIG is not a necessary party under Delaware's Chancery Rule 19(a)(1) or Washington's CR 19(a)(2). It also claims that CIG is not an indispensable party[18] under Washington's CR 19(b).

Also for the first time on appeal, Blucora asserts that Delaware courts have personal jurisdiction over CIG under several federal rules and Delaware statutes. Specifically, it argues that Delaware has jurisdiction over CIG because (1) CIG is subject to jurisdiction under the "bulge" provision of Federal Rule of Civil Procedure 4(k)(1)(B); (2) CIG is subject to jurisdiction under the Delaware long-arm statute, 10 DEL. CODE § 3104; (3) CIG is subject to jurisdiction under the Delaware Limited Liability Company Act, 6 DEL. CODE § 18-109; and (4) CIG is subject to jurisdiction under the Delaware Director and Officer Consent statute, 10 DEL. CODE § 3114. Blucora acknowledges that it did not argue any of these theories to the trial court but asserts that this court should consider them because it can affirm on any ground supported by the record. Shatas urges this court to disregard these arguments and does not address them on the merits.

In general, "[a]rguments or theories not presented to the trial court will generally not be considered on appeal." Washburn v. Beatt Equip. Co., 120 Wn.2d 246, 290, 840 P.2d 860 (1992). However, "'[a] party may present a ground for affirming a trial court decision which was not presented to the trial court if the record

---

[18] Blucora did not challenge Shatas's characterization of CIG as indispensable in its briefing before the trial court. It raised this contention for the first time in the trial court at oral argument. Because of this lack of briefing, the trial court did not consider whether CIG is an indispensable party, but rather, it "accept[ed] Shatas's contention that CIG is an indispensable party" and decided the issue on the basis that Delaware had jurisdiction over CIG. CP at 318.

14

has been sufficiently developed to fairly consider the ground.'" State v. Barker, 162 Wn. App. 858, 863, 256 P.3d 463 (2011) (quoting RAP 2.5(a)).

Here, despite Blucora's assertions to the contrary, the record is not sufficiently developed for us to fairly consider these new theories. Additionally, Shatas fails to address these new arguments in his briefing. Without the benefit of full development of the record and complete briefing, it would be imprudent for this court to address these new arguments. For these reasons, we decline to consider for the first time on appeal whether CIG is an indispensable party. We also decline to consider for the first time on appeal whether the state of Delaware has personal jurisdiction over CIG under any of these federal rules and Delaware statutes. The parties may litigate these issues on remand.

We reverse and remand for further proceedings.

_Trickey, J_

WE CONCUR:

_____                    _Becker, J._